Brady *vs.* Johnson and others, Trustees.

(Decided 15th March 1892.)

---

John C. Brady and Isaac T. Brady, Executors of Samuel D. Brady *vs.* Bradley S. Johnson, Henry H. Keedy, Joseph Bryan, Hugh L. Bond, Jr. and John K. Cowen, Trustees.

*Property of Corporation not Subject to Execution—Judgment creditor—Injunction to Restrain execution—Mortgage with "After acquired property" clause—Chancery practice—Jurisdiction.*

Under certain proceedings in equity a decree was passed for the sale of the Chesapeake and Ohio Canal, and all the works and property appertaining thereto, to satisfy and discharge the bonds issued under the Act of 1878, ch. 58, secured by the mortgage executed under that Act, and also the mortgage debt due to the State, but which decree was made subject to the rights of the bondholders under the Act of 1844, ch. 281, to be subrogated to the rights of the bondholders under the Act of 1878, ch. 58, and to be let into the possession of the Canal and all the property and works of the Company, with power and authority to repair and operate the Canal under the authority and control of the

Court passing the decree. The trustees gave the required bond and took possession of the Canal and all the property of the Company. Subsequently certain persons, executors, under a judgment recovered by their testator, and the enforcement of which by execution, had been perpetually enjoined, caused executions to be levied on certain real property in the City of Cumberland, owned, used, and occupied as part of the property of the Canal company, upon the theory and contention that such property was not necessary or essential to the operation of the Canal, and was therefore liable to execution. Upon application, by petition, of the trustees of the bondholders under the Act of 1844, ch. 281, for an injunction to restrain the execution thus levied, it was HELD :

That the property levied on, from the nature, location, and connection with the Canal, and the use theretofore made of it, was essential to the operation of the Canal, and was therefore not liable to execution.

By certain statutes and the mortgages executed as thereby required, all the property, of every kind and description, then owned, or that might be thereafter acquired by the Canal company, was, and still is, pledged and bound for the debts due the State, subject only to the lien and pledge of the tolls and revenues in favor of the holders of the bonds issued under the Act of 1844, ch. 281, and the priority given to the bonds issued under the Act of 1878, ch. 58. HELD :

That the judgment creditor had no equity as against the State and the bondholders, and that the State and the trustees for the bondholders, whose security would be affected by allowing the propty levied on to be diverted from its present lawful use, were entitled to have the execution restrained by injunction.

A mortgage with the "after acquired property" clause in it, embraces and creates a charge upon all property subsequently acquired by the corporation mortgagor which comes within the description in the mortgage; and this, not only as to property to which the mortgagor acquires the legal title, but also as to that to which it acquires only an equitable title. The mortgage lien, however, upon the subsequently acquired property, only attaches from the time of the acquisition by the mortgagor and subject to all pre-existing liens thereon.

It is well settled, both in the English and American chancery practice, that when the proceedings are of a nature to draw to

the Court the control and possession of the property, the subject-matter of the litigation, whether the property be real or personal, such possession and control of the Court will not be allowed to be displaced or disturbed without the consent of the Court, even though it be attempted under a paramount claim of right. The enforcement of this principle is necessary for the orderly administration of justice, as well as for the protection of the jurisdiction of the Court and its officers and agents, holding the possession of property by its authority.

APPEAL from the Circuit Court for Washington county, in Equity.

The following opinion, containing a statement of the case, was delivered by Chief Judge ALVEY, in the Court below:

"This is an application by petition, filed in these consolidated cases, (*Brown and others, Trustees vs. Chesapeake and Ohio Canal Co., and others, and Sloan and others, Trustees vs. Same,*) by the trustees of the bondholders under the Act of 1844, ch. 281, for an injunction to restrain execution levied upon certain property situated in the city of Cumberland, in the use and possession of said trustees, as part of the property belonging to the Chesapeake and Ohio Canal Company.

"The bills in these consolidated cases were filed, the first by the trustees for the bondholders under the Act of 1844, and the second by the trustees for the bondholders under the Act of 1878, ch. 58. By the first of these bills, receivers of the Canal and all the property of the company were asked to be appointed, and by the second a foreclosure, or sale for foreclosure, was prayed, and also for the appointment of a receiver. These bills were answered by the defendants thereto, and the Canal company prayed for and insisted upon an immediate sale of the Canal, and all the property and works of the company. Subsequently the State of Maryland, by the authority

and direction of the General Assembly, made application
to become a party; and upon becoming a party defendant,
filed an answer to each of the bills, in which it set up
the mortgages of the Canal company to the State, and
joined in the application for the sale of the canal, and all
the property belonging to the company, covered by the
mortgages to the State.   Receivers were appointed, and
afterwards, upon final hearing, the decree of October
2d, 1890, was passed, decreeing a sale of the canal and
all the works and property appertaining thereto, to satisfy
and discharge the bonds issued under the Act of 1878,
ch. 58, secured by the mortgage executed under that Act,
and also the mortgage debt due to the State, but which
decree was made subject to the rights of the bondholders
under the Act of 1844, ch. 281, to be subrogated to the
rights of the bondholders under the Act of 1878, and to
be let into the possession of the canal and all the prop-
erty and works of the company, with power and author-
ity to repair and operate the canal, under the authority
and control of this Court.   The trustees have fully com-
plied with the preliminary conditions of the decree by
giving the required bond, and are now in the possession
of the canal and all the property of the company, and it
is since the decree has been thus complied with and the
taking possession by the trustees, that the judgment
creditors, the executors of Samuel D. Brady, deceased,
have caused executions to be levied upon certain real
property in the city of Cumberland, owned, used and
occupied as part of the property of the canal company.
The property so levied upon is subject to the operation
of the decree heretofore passed, and is, therefore, in the
possession and subject to the control of this Court, the
trustees deriving their authority from this Court and
holding the property of the Canal company subject to the
supervisory jurisdiction thereof, as declared by the
decree.

"There are two judgments sought to be executed against the property in the hands of the trustees. There is a question made as to the time from which the larger of the two judgments became operative—whether from the year 1844 or the year 1849. There is some doubt or ambiguity in the transcript of the record filed, in regard to this matter. But I do not deem it material that the question should be decided upon this application.

"The levy upon the property in the possession of the trustees has been made upon the theory and contention, as set forth in the answer of the judgment creditors, that such property as that described in the schedule of the sheriff is not necessary or essential to the operation of the canal, and therefore it is liable to execution. But from the nature of the property, its location, and connection with the canal and the use heretofore made of it, I cannot hesitate to conclude that the property levied on is needed and essential to the operation of the canal. It is not a question whether the property be absolutely necessary or indispensable to the operation of the work, but whether it has been used, or is of a nature to be of practical use, in operating the work. The wharf, and parcel of land connected therewith, as described, would certainly appear to be of a nature to be essential to the operation of the canal, and, from the evidence in the case, I think all the property levied on is and will be of practical use in conducting the affairs pertaining to the canal and its operation. And that being so, it is clear, upon well settled principles, that an execution will not lie, or will not be allowed to be executed against such property. This was distinctly ruled by the Supreme Court of the United States, by the unanimous opinion of that Court, delivered by Chief Justice TANEY, in the case of *Gue vs. The Tide Water Canal Co.*, 24 *How.*, 257.

"In that case, Gue, the execution creditor, had obtained judgment against the Canal company, a Maryland corporation, in the Circuit Court of the United States for the District of Maryland, upon which he issued a *fieri facias,* and caused the marshal to seize and advertise for sale a house and lot, sundry canal locks, a wharf, and sundry other lots; all of which· property, it was admitted, belonged to the Canal company in fee. And upon a bill in equity for an injunction, filed by the Canal company, it was held that the corporate franchise to take tolls on a canal, except where expressly authorized by statute, could not be seized and sold under a *fieri facias;* nor could the lands or works essential to the enjoyment of the franchise be separated from it and sold under a *fi. fa.,* so as to destroy or in any way *impair* the value of the franchise. The execution was restrained, and the injunction made perpetual. There are many other cases to the same effect, but reference to which is unnecessary.

" Upon this ground alone, if there were no others, this Court would be required to restrain the execution levied on the property in the possession of the trustees. But there are other grounds for restraining the execution, to which it is proper to advert.

" As already stated, the State of Maryland is a large lien holding creditor of the Canal company, and the statutes under which the liens were created make the liens binding upon all the property, both real and personal, of the company, as well that after acquired as that owned at the time of the creation of the liens.

" Under the provisions of the Act of 1834, ch. 241, the State loaned the company the sum of $2,000,000, to be used in the construction of the canal, upon pledge, as security for the loan, of 'the whole of the net revenues of said company, and the whole of the water rights, *lands and other property at any time acquired* by the said

Brady *vs*. Johnson and others, Trustees.

company, or the rents or other avails thereof.' And in pursuance of the requirement of this Act, the mortgage to the State, of the 23d of April, 1835, was made by the company, of 'all and singular the lands and tenements, capital stock, estates and securities, goods and chattels, property and rights, *now or at any time hereafter to be acquired*, and the net tolls and revenues of the said company.' And under the act of 1838, ch. 396, for the purpose of securing or idemnifying the State for interest on $1,375,000, (an amount for which the State had issued bonds or stock to raise money with which to pay for shares of stock subscribed for of the Canal company,) the company executed another mortgage to the State, on the 15th of May, 1839, of 'all and singular the lands, tenements, estates and securities, goods and chattels, property rights, *now or at any time hereafter to be acquired*, and the net tolls and revenue of said company.' None of the money or interest secured by these mortgages has ever been paid to the State.

"The Act of 1844, ch. 281, authorized the company to borrow money and to issue its bonds to the amount of $1,700,000, to provide means to complete the canal from Dam No. 6 to Cumberland, the bonds to be secured by a preferred lien on the net tolls and revenues of the company. By this Act the pre-existing lien of the State was waived and deferred in favor of the bonds so authorized to be issued; but the Act required the Company to execute to the State a *further mortgage* on the said canal, its lands, tolls and revenues, subject to the liens and pledges created and declared by the Act, as an *additional security* for the payment of the loan made by the State to the company, under the Act of 1834, ch. 241, and which mortgage was duly made on the 8th of January, 1846, of 'all and singular the lands and tenements now owned, or *that may hereafter be acquired* by the said company, and all interest that the said company *now has or*

Brady *vs.* Johnson and others, Trustees.

*may hereafter have,* in or to any lands and tenements, estates and securities,' etc.

"It thus appears that, by these statutes and the mortgages executed as thereby required, all the property, of every kind and description, then owned, or that might be thereafter acquired by the company, was, and still is, pledged and bound for the debts due the State, subject only to the lien and pledge of the tolls and revenues in favor of the holders of the bonds issued under the Act of 1844, ch. 281, and the priority given to the bonds issued under the Act of 1878, ch. 58.

"In the case of *Brady vs. The State,* 26 *Md.,* 290, 308, where the very judgment now attempted to be executed was involved, and was then attempted to be enforced against property embraced by the mortgages to the State, and in which case the rights of the State, under the statutes and mortgages to which I have referred, were considered, the Court of Appeals, in discussing the effect of the Act of 1844, ch. 281, and defining the rights of the parties thereunder, said:

"'Mr. Brady, the appellant, by his answer, and in the brief of his counsel, took three positions, which were mainly urged and relied upon in the argument. The first was that by the Act of 1844 the State waived its liens upon the revenues and property of the company in favor of the bonds to be issued under it, and that by such waiver the State retired and gave place to strangers, and having done so it cannot now legally or in conscience step in before other creditors of the company and stand next in priority to said bondholders. It is also admitted that the appellant is not one of said bondholders, or entitled to any priority over the State, except so far as he asserts it by reason of his judgment and proceedings in attachment.

"'It is very clear from the language of the Act of Assembly of 1844, and the mortgage made in pursuance

Brady *vs.* Johnson and others. Trustees.

of it, that the State waived its priority *only in favor of the liens created and authorized by that Act. In all other respects, and against all other creditors,* the State expressly reserved its rights and priorities, and there is no doubt that one of the objects, if not the only object, of taking the new mortgage authorized by that Act, was to reassert and re-secure its prior rights and claims, and place them beyond all cavil and dispute. If other creditors could thus step in and grasp by legal process the tolls or revenues of the company, or *enforce executions upon its property and works,* the plain design of that law would be frustrated. The work itself would not only be destroyed by the abstraction of the means for its preservation, repairs and operation, but the preferred creditors be deprived of their chartered securities, and the State itself defeated in all its plans and munificence for making this work the great and important channel of trade which was designed by these Acts of Assembly, and the conveyances made under them.'

"And the Court held that neither of the positions assumed by counsel, and attempted to be maintained in argument in support of the right of the judgment creditor to execute his judgment as against the credits and property of the company, could be maintained, and the order of the Court below was in all respects affirmed, whereby the injunction restraining execution was made perpetual.

"It would appear therefore to be clear, as held by the Supreme Court of the United States, in the case of *Macalester vs. Maryland,* 114 *U. S.,* 598, in respect to the effect and operation of these same statutes and mortgages, that the judgment creditor has no equity as against the State and the bondholders, and that the State of Maryland and the trustees for the bondholders, whose security would be affected by allowing the property levied on to be diverted from its present lawful use,

are entitled to have the execution restrained by injunction.

"It is insisted, however, that the State is not a party here asking that the execution be restrained, and therefore the State's mortgages ought not to be set up as a shield of the property against the execution. But the State is a party to the consolidated cases in which the decree of October 2nd was passed, and was active in invoking the exercise of the jurisdiction of this Court for the passage of the decree for the sale of all the property covered by its mortgages. It does, therefore, in effect, ask that the property be protected and preserved for the payment of the mortgage debts. Moreover, the trustees for the bondholders, under the Act of 1844, in a certain sense, hold in priority under the State, and are entitled to the protection that the State's liens may afford as security to the bonds issued by the authority and under the agreement of the State; and the trustees being in possession of the property under the authority of the Court, are bound to protect the property as well for the State as the bondholders they represent. I am clearly of opinion, therefore, that there is nothing in this objection that can aid the judgment creditor.

"It is also argued that part of the property levied on is not embraced or protected by the mortgages to the State; that as part of the property seized under the execution was purchased by the Canal company in 1878, of Walsh and McKaig, and upon receiving a deed therefor the company immediately executed a mortgage of the property to the vendors to secure a balance of unpaid purchase money, and upon which mortgage there has been default, and a decree obtained for the sale of the property, (which decree now stands to the use of Sloan,) therefore, it is contended, the liens or mortgages held by the State never attached upon this property. But such position is wholly untenable. The purchase of the

property, though not fully paid for, and though the legal estate was and is still vested by the mortgage in the vendors, or their assignee, placed the property in the possession of the Canal company, and vested the equitable estate and right of redemption in the company; and that interest was at once covered by the previous mortgages to the State. For it is now well settled that a mortgage with the 'after acquired property' clause in it, embraces and creates a charge upon all property subsequently acquired by the corporation mortgagor which comes within the description in the mortgage; and this, not only as to property to which the mortgagor acquires the legal title, but also as to that to which it acquires only an equitable title. *Central Trust Co. vs. Kneeland,* 138 *U. S.*, 414, 419; *Toledo, &c., Railroad Co. vs. Hamilton,* 134 *U. S.*, 296. The mortgage lien, however, upon the subsequently acquired property only attaches from the time of the acquisition by the mortgagor, and subject to all pre-existing liens thereon. *Central Trust Co. vs. Kneeland, supra.* It is clear, therefore, that the State's liens embrace all the property levied on by the sheriff.

"If, however, it were shown that the judgments in question constituted prior or superior liens upon the property seized under the executions, to that held by the State or the bondholders, still the sheriff could not be allowed to proceed with the executions under existing condition of proceedings as shown in this case.

"The levy of the executions assumes that the property seized belongs to the Canal company; and to say nothing of the use of the property in connection with the exercise of the franchise of the company, so as to be exempt from execution and sale, the decree of foreclosure and sale, of the 2nd of October, 1890, and the placing of all the property of the canal company in the possession of the trustees for the bondholders under the Act of

1844, subrogated to the rights of the bondholders under the Act of 1878, ch. 58, utterly precludes the right of the judgment creditor, or the sheriff acting under the authority of an execution issued on the judgment, from interfering with, or in any manner disturbing the possession of the trustees holding under the decree of the Court authorizing their possession. The decree is founded upon the rights of the State, under the statutes and mortgages before referred to, and upon the rights of the bondholders under the Act of 1844, and those under the Act of 1878, ch. 58, to which the bondholders under the Act of 1844 have been subrogated. By this decree all the property of the Canal company, within the limits of this State, has been brought under the control and jurisdiction of this Court, and the trustees hold possession under its authority, and are obligated to account to it for the faithful discharge of the duties imposed upon them by the decree of the 2d of October, 1890.

"And such being the case, it is well settled, both in the English and American Chancery practice, that when the proceedings are of a nature to draw to the Court the control and possession of the property, the subject-matter of the litigation, whether the property be real or personal, such possession and control of the Court will not be allowed to be displaced or disturbed without the consent of the Court, even though it be attempted under a paramount claim of right. The enforcement of this principle is necessary for the orderly administration of justice, as well as for the protection of the jurisdiction of the Court and its officers and agents, holding the possession of property by its authority. It was said by the Supreme Court of the United States, in the case of *Morgan's Co. vs. Texas Central Railway Co.*, 137 *U. S.*, 201, in reference to a foreclosure decree in the Circuit Court of the United States, 'that the jurisdiction of the Circuit Court did not depend upon the citizenship

Brady *vs.* Johnson and others, Trustees.

of the parties, but on the subject-matter of the litigation. The property was in the actual possession of that Court, and this drew to it the right to decide upon the conflicting claims to its ultimate possession and control.' And it is laid down by *Daniel,* in his work on *Equity, Pleading and Practice, vol.* 2, *p.* 1268, supported by the citation of many decided cases, that the proper course to be pursued by any person who claims title to an estate or other property sequestered or under the control or the Court, whether by mortgage or judgment, lease or otherwise, or who has title paramount to that under which the Court has assumed control, is to apply to the Court to direct an examination; and such an examination is known as an examination *pro interesse suo.* A party, therefore, holding a judgment which is claimed to be a prior or superior lien upon the property, the same as a mortgagee, if desirous of enforcing it against the property of the debtor after it has been taken into the custody and control of the Court, must first obtain leave of the Court for that purpose. This would appear to be the settled course of proceeding; and a judgment attempted to be executed regardless of this settled practice will be averted, and the proceedings thereon restrained by an injunction. *Angel vs. Smith,* 9 *Ves.,* 335; *Russell vs. East Anglian Railway Co.,* 3 *Mac. & G.,* 104; *Wiswall vs. Sampson,* 14 *How.,* 52, 65; *Krippendorf vs. Hyde,* 110 *U. S.,* 276, 283.

"Without pursuing the subject further, I am clearly of opinion upon each of the various grounds to which I have referred, that the trustees now in charge of the canal and all the property of the company, under the authority and jurisdiction of this Court, are entitled to the injunction as prayed for by them, and I shall order accordingly."

The Court thereupon decreed that an injunction should issue as prayed, against the defendants. From this decree the defendants appealed.

The cause was argued before MILLER, ROBINSON, IRVING, BRYAN, FOWLER, McSHERRY, and BRISCOE, J.

*J. W. S. Cochrane,* and *William J. Read,* for the appellants.

*Bradley T. Johnson,* and *John K. Cowen,* (with whom were *Hugh L. Bond, Jr., E. J. D. Cross, Bradley S. Johnson, J. Clarence Lane, Henry H. Keedy,* and *Ferdinand Williams,* on the brief,) for the appellees.

PER CURIAM:—The questions involved in this case have been so fully and so thoroughly considered and discussed in the opinion filed by Chief Judge ALVEY in the Circuit Court for Washington County, that we need not restate them in this Court. As we entirely concur in the conclusions to which he came, we shall affirm the decree from which this appeal has been taken for the reasons which he has given.

> *Decree affirmed, with*
> *costs in this Court, and*
> *in the Court below.*

(Decided 15th March, 1892.)