# STATE OF MARYLAND *vs.* JOHN K. COWEN ET AL., TRUSTEES.

*Decision on Former Appeal Between Same Parties Binding on This Appeal—Rights of Bondholders of Chesapeake and Ohio Canal Co.*

It was held on former appeals in this case that the trustees for the mortgage bondholders of the Chesapeake and Ohio Canal Co., possessing a lien only on the tolls and revenues of the canal, were entitled to operate the canal until it should appear that no revenue could be derived therefrom applicable to the payment of the bonded indebtedness and that not until then could the canal be sold under another mortgage to the State upon the *corpus* of the property. In this case the trustees for said bondholders ask for an extension of time for further operation of the canal, and show that it is capable of producing revenue applicable to the payment of their claims. *Held,* that the decision on the former appeal holding that no sale of the property should be ordered until it clearly appears that the liens of the bondholders are valueless is conclusive of this case and that the trustees should be allowed to continue the operation of the canal for a further period of four years upon the terms formerly imposed.

Appeal from an order of the Circuit Court for Washington County (STAKE, J.), by which it was adjudged that the continuance of the contract between said trustees and the said Chesapeake and Ohio Transportation Company of Washington County is advantageous to the trust estate, and said contract should be continued in force for the balance of the term of ten years, to-wit, to January 1st, 1906. And the Court doth

thereupon order, adjudge and decree, that the said trustees be and they are hereby authorized to continue said contract in full force and effect according to its terms ; and doth further order, adjudge and decree that the period of four years from the first day of May, 1901, mentioned in sub-section six of section five, of the decree entered in these consolidated causes on the second day of October, 1890, be and the same is hereby, for good and sufficient cause shown, extended to the end of four years and eight months from the first day of May, nineteen hundred and one.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, PEARCE, SCHMUCKER and JONES, JJ.

*Isidor Rayner, Attorney-General,* for the appellant.

If the time is now extended as the trustees ask, and if the sale is now again suspended, that means an absolute extinction of the claim of the State which in the year 1891, according to the statement of JUDGE ALVEY, made in the case of *Brown* v. *The Canal Company,* amounted to over twenty millions of dollars.

According to any method of book-keeping that may be adopted and according to any application or apportionment of payments that may be devised, if the contract with the Chesapeake and Ohio Transportation Company of. Washington County is continued now, which of course means its indefinite continuance from time to time, the State's entire claim might as well be blotted from the books of her treasury. This is a matter of simple mathematical calculation. If we take the hundred thousand dollars a year received from the Transportation Company, and apply it where it is properly to be applied, to the payment of the interest on the original issue of bonds of one million seven hundred thousand dollars under the Act of 1844, the one hundred thousand dollars a year will be two thousand dollars a year short of paying the interest on said amount. Of course if interest can be calculated upon the original amount with interest, it will take nearly three hun-

dred thousand dollars a year to pay the accruing interest. It
will thus be seen, that the whole scheme according to the
trustees reports, is simply juggling with figures, because all
that it is neceseary for the trustees to do without ever paying
a cent, is to credit the interest account of the bonds of 1844
with a hundred thousand dollars a year and thus indefinitely
and perpetually remain in possession of the canal. This pre-
sents a new phase of the case which was not before this Court
in either of the cases in 73rd or 83rd Maryland. In the Court
below, the trustees did not deny nor can they deny in this
Court, the demonstrable force of these figures which show
with mathematical accuracy that this arrangement which they
have made with a concern which they call the Chesapeake
and Ohio Transportation Company of Washington County,
enables them to charge for the bondholders whom they repre-
sent, upon one side of the ledger on their interest account,
one hundred and two thousand dollars a year, being six per
cent on the one million seven hundred thousand dollars worth
of bonds aforesaid, and a credit on the other side of the ledger
of one hundred thousand dollars a year, the amount guaranteed
by this enterprise called the Chesapeake and Ohio Transporta-
tion Company of Washington County, which they have so
ingeniously organized for the purpose of defeating the purpose
of this honorable Court. The Baltimore and Ohio Railroad,
represented by the trustees, and the Transportation Company,
being one and the same concern, it would not require the pay-
ment of any money, but simply an entry upon the books to
accomplish the result indicated. The conclusion therefore
irresistibly follows, that there is no point of time at all at which
the canal can be sold according to the contention of the trus-
tees, because just so long as they are permitted by the Court
to continue this system and that contract, so long will the
Baltimore and Ohio Railroad be enabled to hold the canal
without any interference from the State. If the one hundred
thousand dollars is to be applied to the payments of the interest
already due then it will take forty years before they can com-
mence to pay the interest on the original issue of bonds under
the Act of 1844.

The State does not believe that this Court ever intended by anything it has said in the cases in 73 or 83 Maryland to permit its decree to be evaded and trifled with in this way. This Court knows now from the trustees' report in the Record, what it did not know then. Then it was an experiment, now the experiment has been tried and has proved to be a disastrous failure. If the decree of the Court is examined, it will be found that no one of its provisions countenances the indefinite extension of the trustees' possession of the canal.

It conclusively appears from the trustees' report and petition in this case that the tolls and revenues derived from the said canal have been *insufficient to liquidate and discharge the amount of the cost of repairing and restoring the same.* There is a deficit now of one hundred and twenty-one thousand dollars.

There has been *nothing whatever paid on account of the preferred liens for labor and supplies.*

Therefore the evidence is conclusive as set forth in the order that the said canal cannot be operated so as to produce revenue with which to pay the bonded indebtedness of said canal company, and the right and power is therefore reserved under said order to the Court to order and direct the execution of the decree of sale.

It will be particularly observed, that the order affirmed by this Court in 83 Maryland, does not provide for any further extension, and it is therefore claimed that the power of the Court in reference to the extension of time has been exhausted. Even under the original decree, which grants the extension, no good and sufficient cause whatever has been shown for again extending the time as has been heretofore set forth in this brief. The money received from the Chesapeake and Ohio Transportation Company is not sufficient to pay the interest on the bonds of 1844, and therefore it follows, that the time will never arrive when the property can be sold or the rights of the State enforced, if at the expiration of each period the time is extended.

It is therefore earnestly insisted by the State, that the exper-

iment which was authorized by the Court having failed, the
time has now arrived for the sale of the property.   No one of
the questions involved in this appeal was before the Court in
either of the cases in 73 or 83 Maryland.   The question that
is now before the Court is this : Will the Court in view of the
circumstances disclosed by the trustees' report and petition,
grant an indefinite and perpetual extension of the contract
with the Chesapeake and Ohio Transportation Company, of
Washington County, and will it permit a fictitious scheme of
appropriating one hundred thousand dollars a year in payment
of the interest on the bonds of 1844, to frustrate the plain
intent of the decree for the sale of the property ?

*Hugh L. Bond, Jr.,* (with whom was *John K. Cowen* on the
brief ), for the appellees.

The rights of the parties under their contracts, so far as
those rights are involved in the present appeal, have been fully
adjudicated by this Court in its decision reported in 83 Md.
572–579.

The contract, the continuance of which for five years was
approved by the order of April 29th, 1901, is the same con-
tract to which this Court said it could see no objection.   No
new fact is developed, proved or sought to be proved on the
part of the State to show that the rights of the bondholders
represented by the appellees have ceased to have any value ;
on the contrary, the appellees show that they have for five
years been receiving a net income from their trust estate of
$100,000 per year, and have been enabled to discharge and
pay $553,922.64 of their indebtedness ; that the continuance
of this income for five years longer is guaranteed by the con-
tinuance of the contract, and thereby the appellees will be
enabled to discharge the balance of $121,000 of their indebt-
edness and have an additional amount of not less than
$350,000 for distribution under the Court's orders.

In the face of this showing, without the production of one
scintilla of evidence to the contrary, the State asks this Court
to hold that it clearly appears that the contract rights of the

bondholders are so worthless as to enable the Court to disre-
gard and destroy them utterly. That the Court cannot so
hold, without stultifying itself, seems to us too clear for argu-
ment.

PAGE, J., delivered the opinion of the Court.

It is not necessary in this opinion to restate the facts con-
nected with the origin of the Chesapeake and Ohio Canal
Company, the creation of its property and indebtedness, or
the successive steps in the litigation that this appeal again
brings before us. All that has been exhaustively done in the
several opinions in the two cases which are reported respect-
ively in *State* v. *Brown et al., Trustees*, 73 Md. 484 *et seq.*,
and *Canal's Company's case*, 83 Md. 551 *et seq.* In the first
mentioned, the original decree passed by the lower Court was
affirmed, this Court there holding that the trustees of the
bonds issued under the Act of 1844, ch. 281, and secured by
the several mortgages executed in pursuance of that Act, were,
"by the default of the company to pay its indebtedness ac-
cording to the terms of these mortgages, entitled to take pos-
session of the canal upon the terms prescribed by the decree ;"
that this right existed as against the State ; and that the said
trustees ought to be allowed to put the property "in a condi-
tion to produce revenue." The decree, thus affirmed, pro-
vided among other things for a sale of the property ; but by
the fifth section this provision was suspended for a period of
four years, and the trustees of the bondholders under the Act
of 1844, ch. 281, upon their compliance with and perform-
ance of certain terms and conditions, were authorized to pro-
ceed to operate the canal "as a public water-way," and apply
the revenues, after current and ordinary expenses incurred in
operating the canal and keeping it in working repair, 1st. To
the expenses incurred by the receivers, the amounts expended
to restore the canal ; 2nd. To whatever sums that were nec-
essary to discharge liens superior to that of their own claim
for labor and supplies, &c.; 3rd. The interest accrued and to
accrue, with the principal, of the bonds issued under the Act

of 1878, ch. 58, and lastly, to the principal and interest of the bonds issued under the Act of 1844. When the last mentioned bonds have been paid, their possession was to terminate. The decree further provided that if at the end of four years, the revenue had not been sufficient to liquidate the amount of the cost of repairing the canal, the expenses and compensation of the receivers, and to pay "any amount" that might be a preferred lien on the tolls for labor and supplies furnished to the company, such failure in the tolls and revenues "shall be regarded as evidence conclusive (unless the time be extended by the Court for good and sufficient cause shown) that the said canal cannot be operated, so as to produce revenue with which to pay the bonded indebtedness of said canal company ; and further, whenever it shall clearly appear that the said canal cannot be operated by the said trustees, so as to produce revenue with which to pay the bonded indebtedness of said company, the right and power is hereby reserved to this Court, to order and direct the execution of the foregoing decree of sale."

Upon the expiration of the four years mentioned in the decree the trustees, who had been operating the canal during that period, applied to the Court below for an extension of six years more. At that time the net revenues had been far from sufficient to liquidate any of the claims against the company. Up to the 1st December, 1893, the receipts from net tolls, rents and other sources was $270,970.73, while the expenditures for other accounts than the repair of the canal were $250,327.17. The trustees in their report showed to the Court that the extent of the repairs required delayed traffic for a considerable time ; that by reason of long disuse the canal as a business enterprise and means of transportation had become discredited at the time they had received possession, but that they had carried on the work of repair and the canal was then in "better condition as a water-way than ever before in its history." They also reported that they had negotiated a contract with the Chesapeake and Ohio Transportation Company of Washington County, whereby the trustees were guar-

anteed a net fixed income of not less than $100,000. The lower Court approved of the agreement and extended the period as prayed. On appeal, this Court reaffirmed what had been decided in the prior appeal, and affirmed the order of the lower Court. *The Canal Company's case,* 83 Md. 570. The Court by JUDGE FOWLER said, it was held in the former appeal that "not to have granted the appellees possession of, *and time* to operate the canal for the benefit of their *cestui que trustent,* would have been inequitable, as well as illegal under the then existing circumstances." "If it was inequitable to deny the appellees possession of the canal in 1891, we think it would be even more so now, when in addition to the loss they would have sustained by a sale, they would according to the State's contention, now lose also the large amount they were authorized under the decree to spend in repairs and restoration." "The State cannot maintain its right to a sale upon any fair or reasonable construction of the Act of 1844, ch. 281, its mortgage of January 8th, 1846, and that of the appellees of June 5th, 1848, which together contain the contract between the canal company, the State and the bondholders of 1844. Certainly no right to such a sale can be enforced, until it appears, that the *cestui que trustent* can receive nothing on account of their claims from the operation of the canal by the appellees."

We have quoted freely from these opinions because of the fact that this appeal brings before us an additional proceeding in the same cause, between the same parties and affecting the same subject-matter. Whatever, therefore, has been definitely decided by this Court in the prior appeals should be regarded as settled, and the principles upon which such decision rests should be taken, as far as applicable, to control the questions now before us. They should be held to constitute the "law of the case," binding alike upon this Court as upon the Court below. In *McLaughlin* v. *Barnum,* 31 Md. 446, it was said by this Court, that a decision by this tribunal upon every point "to which it appears the judicial mind was applied and which was considered, adjudged and reached as a conclusion of the Court, is not only of the same authority as any other decision

of the appellate Court, but on this appeal in the same cause, between the same parties, when the same relief is sought upon the same subject-matter, and where the case is in no respect variant from that presented on the first appeal, has become the *law of the case* in its further progress, binding upon this Court as well as the Court below." *Young* v. *Frost,* 1 Md. 395; *Hammond* v. *Inloes,* 4 Md. 164; *Thomson* v. *Albert,* 15 Md. 282; *Mitchell* v. *Mitchell's Lessee,* 6 Md. 234; *Preston & Hepburn* v. *Leighton,* 6 Md. 97.

In the *Cumberland Coal & Iron Co.* v. *Sherman,* 20 Md. 131, it was said to be a "cardinal maxim of justice and jurisprudence, that the Court should adhere to its own decisions in the same cause and between the same parties." *Alexander* v. *Worthington,* 5 Md. 471; *Mong* v. *Bell,* 7 Gill, 246.

The opinion of the Court in 73 Maryland (*supra*) was concurred in by all the Judges who sat in the case; in the other case, (83 Md.) the rulings were made by a majority only. But whatever may have been the views of the individual members of the Court at the times those cases were decided, or whatever they may now entertain as to the particular questions then passed on, the principle then established and enforced by the rendition of judgment, not having been expressed by way of illustration or in argument only, but in direct and positive terms as applicable to the questions then before them for adjudication, constitute the law of this case, binding upon all the parties, the Court below and this Court.

Now, being so guided, what are the conditions of fact upon which the decree for the sale of the canal can be enforced? This Court in 83 Md. 577, has very clearly answered that question. "When it appears," says the Court, "and not till then, that the property cannot be operated so as to produce revenue applicable to the payment of the bonded indebtedness of the company, then under *the provisions* of the decree affirmed by this Court, the Court may be asked to decree a sale under the State's mortgage." "Until that time, in other words, until it clearly appears that the liens of the appellees are valueless, and can therefore neither be lessened nor impaired, a sale

* * can be supported upon no ground legal or equitable."
Can it be reasonably determined from anything that is before
us, that the lien has now become valueless? Has it been
demonstrated as contended by the State, that the canal can
never be operated so as to produce revenue that can be applied
to any of the bonded indebtedness of the company? Such
conclusions most certainly cannot be reached, if the facts set
forth in the report of the trustees be accepted, and there is
nothing in the record that in any respect casts doubt upon
what they have there stated. They report that the total sum
borrowed, including interest, to defray the cost of repairing
and restoring the canal amounted to $674,922.64, of which
out of net revenues they have paid $553,922.64, leaving still
unpaid on that account the sum of $121,000. If the same net
income be received during the next four years, not only will
the amount due for cost of repairing and restoring the canal
have been entirely liquidated, but there will be a considerable
balance to be applied, as provided by the decree. Should the
period for the suspension of the decree for a sale be still
further extended, and the same net revenue be received, the
trustees would at a day not far distant be in a position to pay
to the bondholders of 1844, at least a part of what may be
then due them. Nor is it unreasonable to suppose that the
net income will be any less during the next four years. The
trustees further report that "the canal is now in the highest
state of efficiency at any time since its construction"; that "the
general maintenance of reasonable transportation charges by
the railroad companies that serve either the same coal fields
from which the canal derives its traffic, or coal fields competi-
tive with those of the canal, makes it possible to transport
coal on the canal, both for local consumption and coastwise
shipment, on tolls and charges remunerative to the canal and
all engaged in canal transportation." They further report that
the Chesapeake and Ohio Transportation Company of Wash-
ington County is willing and has agreed, that their contract
shall run the full ten years, and that the guaranteed income
to be derived through it, will not only provide for the pay-

ment of the unpaid balance of the money borrowed for restoring the canal, but also a fund not less than $350,000 "for distribution to such interests as the Court may find entitled to the same." Under these circumstances we cannot find the conditions of fact that must exist before we can order the sale of the property. We cannot decide that the lien of the appellees is valueless or that the property cannot be operated so as to produce revenue applicable to the bonded indebtedness of the company. No valid objection has been shown why the continuance of the contract with the Transportation Company should not be permitted, and there is certainly nothing in the present condition of the canal or in the prospect of revenue for the future, that would warrant us, in the face of the decisions of this Court heretofore made, in depriving the trustees of the right to use and operate the property, as provided by the original decree.

The order of the lower Court will therefore be affirmed.

*Order affirmed and remanded.*

(Decided January 15th, 1902.)

Briscoe, J., dissented.