## S. RINEHART COHILL *v.* CHESAPEAKE & OHIO CANAL COMPANY ET AL.

[No. 7, October Term, 1939.]

*Decided December 13th, 1939.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, JOHNSON, and DELAPLAINE, JJ.

*Leo H. Miller* and *E. A. Howell,* for the appellant.

*William P. Lane, Jr.,* for the appellees.

SHEHAN, J., delivered the opinion of the Court.

The appeal in this case is from an order of the Circuit Court for Washington County overruling exceptions to, and ratifying, an audit, distributing a large sum of money in the hands of the Receivers of the Chesapeake and Ohio Canal Company, with certain specific directions and reservations with respect to a part of this fund.

In this case is presented an exceedingly interesting historical review of facts and circumstances extending over a period of more than a hundred years, relating to the construction and financing of the Chesapeake and Ohio Canal, and its relation to the District of Columbia, and the States of Maryland and Virginia. In its inception it was one of the greatest enterprises that has ever been inaugurated, sanctioned, or promoted by the State of Maryland. It brought to the State, and to many people, financial losses and disappointments; nevertheless, in its day it served a great and beneficial use. In its conception, and promotion, the plan was to establish a great waterway for transportation, connecting the Chesapeake Bay and the Ohio River. The ultimate design was never perfected, but it did serve a great use in transportation from the far western part of our State to the tidewater country of Maryland.

The Charter of the Chesapeake and Ohio Canal was originally granted by the State of Virginia in 1824, and this Charter was confirmed by the Congress of the United States and the Legislature of Maryland. No express authority, or power, to borrow money was originally granted to the Company; but subsequently the Assembly of Virginia, in 1844, and the General Assembly of Maryland, in 1843, and the Congress of the United States, in 1845 (5 Stat. 722), gave express authority to the Corporation, through its proper officials, to borrow money from time to time, to carry into effect the purposes and powers authorized by the charter, and to issue bonds, and other evidences of such loan, and to pledge the properties and revenue of the company for their payment, and the interest accruing thereon, but prior rights or liens of the State of Maryland were preserved except in so far as they were waived, deferred or postponed by the Legislature to other obligations. After the company had begun its construction of the canal, through the sale and issuance of stock, of which the State of Maryland became a large holder, it became necessary for it to borrow large additional sums of money for that purpose; it therefore

turned to the State of Maryland for further assistance in financing, and completing its projects. Under the authority of the Act of 1834, ch. 241, the State of Maryland loaned the Chesapeake and Ohio Canal Company the sum of $2,000,000, to be used in the construction of the canal, and took as security therefor a mortgage, dated Aril 23rd, 1835, under the terms of which the following property was pledged, "All and singular the lands and tenements, capital stock, estates and securities, goods and chattels, property and rights, now, or at any time hereafter to be acquired, and the net tolls and revenue of said Company."

The above sum of money was insufficient to finish the construction of the canal, and under the Act of 1838, ch. 396, the company executed another mortgage to the State of Maryland, on the 15th, of May, 1839, in the sum of $1,375,000, this being the amount for which the State had issued bonds to raise money with which to pay for its subscription for shares of stock of the Canal Company, which mortgage covered, "all and singular the lands, tenements, estates and securities, goods and chattels, property, rights, now or at any time hereafter to be acquired, and the net tolls and revenues of said Company."

The company, in 1844, had developed a plan to complete the canal from Dam No. 6 to Cumberland, and for this purpose the Legislature of Maryland, by the Act of 1844, ch. 281, authorized it to borrow money and issue its bonds to the amount of $1,700,000. These obligations are known as the bonds of 1844. In order to add additional security for the bonds, and to facilitate their sale, the State of Maryland waived and deferred the pre-existing lien of the State in favor of the bonds so authorized to be issued, but this Act required the company to execute to the State a further mortgage upon the said canal, its lands, tolls and revenues, subject to the liens and pledges created and declared by the Act. The mortgage was duly made and executed on the 8th day of January, 1846, but was not recorded until May 1st, 1848. This mortgage covered, "all and singular the lands and

tenements now owned, or that may hereafter be acquired by the said Company, and all interest that the said Company now has, or may hereafter have, in and to any lands, tenements, estates and securities." This seems to have ended the financial assistance and relations of the State and the Company for a number of years; but in 1878, the canal having been seriously damaged by a flood or freshet, it became necessary for the State to come to its aid, and the State of Maryland, in this emergency, waived its liens in favor of a loan for that purpose, and gave authority to the Company to issue preferred bonds to the extent of $500,000. This transaction was authorized by the Act of 1878, ch. 58, and these obligations are known as bonds of 1878, and were secured by a mortgage of the tolls and revenues, and also of all the property and franchises of the Company and were, "to be paid and discharged in preference to any other claims and liens upon the Company, or its lands, and property, and in preference to any bonds which may be subsequently issued by the Company."

In 1890 this litigation was begun, at which time it is stated that considerable indebtedness had been incurred to various persons for labor performed, and materials provided for the company, and the State of Maryland further waived and released its liens upon the property of the company, and upon its tolls and revenues, in favor of such persons as furnished labor and materials during the period between January 1st, 1877, and January 1st, 1890, and also in favor of judgment creditors whose judgments were valid and subsisting on January 1st, 1890, provided such claims were authenticated in the manner provided in the Act of 1896, ch. 136½, which Act contained the provisions and effectuated the purposes above recited. All such claims were required by the Act to be filed on or before September 1st, 1896, in the Circuit Court for Washington County, but a number of persons had filed their claims with Charles A. Little, auditor, appointed by the Governor of the State, believing that they were complying with the provisions of the Act of 1896,

but the Act of 1900, ch. 270, undertook to, and did, remedy this error by providing that those persons filing with the auditor should have the same rights as those filed with the Circuit Court. The obligations, above recited, were outstanding and unpaid and most of them had been so for many years. The Chesapeake and Ohio Canal Company had met with many reverses and its operation was discontinued in the year 1923. The Company had for many years been in the hands of receivers. In 1938 new receivers were appointed at the instance of the Baltimore and Ohio Railroad Company, a creditor of the Canal Company, holding large obligations by assignment. These receivers were authorized to negotiate the sale of the entire assets of the Canal Company, and the sale was made, on which $2,100,000 was paid by the United States. This sum the receivers reported to the court on August 13th, 1938, and the sale was finally ratified and confirmed. It now became the duty of the receivers to distribute the proceeds of the sale to creditors according to their rights, preferences, and priorities. Due notice was given to creditors, by the auditor to whom the matter had been referred, to file their claims, properly authenticated, with the clerk of the court. The appellant filed his claims in due course. The auditor's report and account was filed on September 30th, 1938, exceptions thereto were filed by the appellant on October 13th, 1938, and after hearing was had, the exceptions were overruled, "without prejudice to him but reserving to him the right to prove what claim, if any, he may have before the Auditor of this Court in connection with the further distribution of funds in this cause," and the account was ratified by the court.

The appellant's claims are in the form of five promissory notes of the Chesapeake and Ohio Canal Company, in the aggregate amount of $1605, all dated September 13th, 1842, with interest from that date, and also upon a judgment recovered in 1850 for the amount of $315, with large accruals of interest, upon which judgment a *sci. fa.* was issued to the August Term of said court in

1853. The exceptions filed to the audit raise questions as to the rights, preference and priorities of various creditors of the Chesapeake and Ohio Canal Company. The auditor, in stating his account, after the payment of sundry items of expense, had remaining for distribution $2,091,514.97. He then allowed to the Potomac Light and Power Company its claim arising out of an agreement of July 28th, 1936, of $11,500. With respect to this item, and the items for charges, costs, and expenses, there seems to be no question, and we will not concern ourselves further with them. The four large items which are in dispute, and which are questioned by the exceptions to the ratification of the audit, are as follows:

One. The principle and interest on the canal bonds of 1878 of $132,500, and interest accrued thereon of $176,226.75, or $308,726.75. (This item, $132,500, is the balance of the principle of the bonds of 1878. It is explained that certain properties not useful to the Canal Company had been sold, and that certain of the bonds had been liquidated and cancelled and the proceeds of their sale applied on account of these bonds as a first lien upon the property of the Canal Company, leaving the balance above indicated).

Two. The aggregate of claims filed under the Act of 1896, ch. 136½, and under the Act of 1900, ch. 270, of $141,926.38, with interest aggregating $365,436.62, and court costs with respect to said claims of $884.15, make a total of $508,647.15.

Third. The mortgage loan by the State of $2,000,000, above recited, bearing date April 23rd, 1835, the amount paid on account of which was $1,062,641.07.

The three large claims last mentioned are held by the Baltimore and Ohio Railroad Company by assignments, and were, by this company, presented to, and filed with, the auditor, and allowed by him.

Fourth. After allowing these claims, and making the payments, above recited, there was a balance of $200,000 remaining in the hands of the receivers, out of the said proceeds of sale. The auditor stated in his report that he

allowed this balance to be retained by the receivers, for further distribution to labor claims and judgments that may be properly filed and proven under the Acts of 1896 and 1900, including interest thereon, and further distribution to costs, commissions, counsel fees and auditor's fees, and for further distribution to claims properly proven in the order of their priority.

The appellant excepts to the distribution to the Baltimore and Ohio Railroad Company of the sum of $308,726.75, in preference to his judgment of record in Alleghany County, unpaid, and unsatisfied, and further because of distribution to the Baltimore and Ohio Railroad Company of that sum, or any other sum, as holder of the canal bonds of 1878, before other claims, including his own, are paid. There is also an exception to certain claims of the Baltimore and Ohio Railroad Company, as assignee, filed under the Acts of 1896 and 1900, amounting to $508,647.15, as being entitled to payment without considering like claims of other claimants arising under the same Acts, and having the same priority. The appellant excepted to the allowance to the Baltimore and Ohio Railroad Company of the sum of $1,062,641.07, as part payment of the mortgage of $2,000,000 given in 1835. With respect to this claim the bare statement is made that the auditor had no authority to give preference to, and order distribution thereof, as was done. To recover in this case the appellant must rely upon an equal or preferential equity with respect to his judgment of September 3rd, 1842, or on the notes held by him aggregating $1605. He claims that he is to be preferred, or has equal equity, with respect to all of the claims asserted by the Baltimore and Ohio Railroad Company as assignee. There is a further objection to the retention of the sum of $200,000 in order to pay prior claims and judgments, commissions and counsel fees, and auditor's charges, because the same was not sufficient for that purpose, and does not give to the exceptant adequate protection as to his claim, but there is no evidence as to this. All of these exceptions have been overruled and the audit

ratified, from which action this appeal is taken. The three obligations, above described, are all held by the Baltimore and Ohio Railroad Company, and the preference, with respect to each of these claims, is of little practical importance, but the question of preferences over the claims of the appellant presents the issue to be here decided. We are confronted with three major questions for consideration in the dispositions of this case. They all involve large sums of money.

The first question presented is: Was there error in giving preference to the Baltimore and Ohio Railroad Company, assignee of the canal bonds of 1878, in the sum of $308,726.75? This includes principal and interest on these outstanding bonds. The answer to this question is found in the Act of 1878, ch. 58, wherein the State waived its interest as a claimant in behalf and to the extent that the bonds should be issued under that Act. The status of these bonds was before this Court in the case of *State v. Brown,* 73 Md. 484, 21 A. 374. This court has passed upon the rights and priorities under the mortgage of 1835, the bonds of 1844 and the bonds of 1878, and the claims under the Acts of 1896, ch. 136½ and of 1900, ch. 270. Considering these questions in the order set out in the audit, we find that under the Act of 1878, ch. 58, these bonds were authorized to be issued, and the State of Maryland, in order to give them more stability and security, and to make them easily marketable, waived its liens in favor of these bonds, but only to that extent. In *Brady v. Johnson,* 75 Md. 445, 26 A. 49, 51, this court adopted the opinion of Chief Judge Alvey, in the Washington County Court, in which he states, "It thus appears that by these statutes, and the mortgages executed as thereby required, all the property, of every kind and description, then owned, or that might be thereafter acquired, by the company, was, and still is, pledged and bound for the debts due the state, subject only to the liens and pledge of the tolls and revenues in favor of the holders of the bonds issued under the act of 1844, ch. 281, and the priority given to the bonds issued

under the act of 1878, ch. 58," has been recognized and defined in the case of *State v. Brown, supra,* and it has been held that the bonds of 1878 were the first lien upon the property of the Canal Company. In consequence of the Acts of the Assembly, and the decisions of this court, the Auditor first distributed to the Baltimore and Ohio Railroad Company the sum of $308,726.75, being the amount of it's claim, including interest, as the holder of the 1878 bonds. With respect to these canal bonds of 1878 it will be recalled, as above stated, that these were repair bonds made necessary by the destruction of property by a flood or freshet happening on or about this time. There cannot be any doubt as to this item and the audit should have been ratified and confirmed, and in passing, it may be said that it is claimed, and not denied, that the very judgment sought to be asserted in this case as a preference was before this court in *Brady v. State,* 26 Md. 290, and there the court held that the judgment could not be maintained as a preference against the property embraced in the mortgages of the State. A number of years later, in *The Canal Company's Case,* 83 Md. 549, 35 A. 161, 170, 354, 581, this court was asked to determine the relative priority of the bonds of 1878, the bonds of 1844 and the State's mortgage lien of $2,000,000, and this court, in passing upon that question, stated: "That the bonds of 1878 have the first lien on the proceeds of sale; the claims of the state under its mortgages have the second, and the bonds of 1844 have the third. As the legislature, at its last session, enacted that certain labor claims should be paid out of the amount coming to the state, these claims will be paid according to the directions of these statutes."

These pronouncements of the court defining relative rights and priorities, as above indicated, are binding in effect upon the parties, the property, and upon the court below, for in *State v. Cowen,* 94 Md. 487, 51 A. 171, 172, this court said: "Whatever, therefore, has been definitely decided by this court in the prior appeals should be regarded as settled, and the principles upon which such deci-

sion rests should be taken, as far as applicable, to control the questions now before us. They should be held to constitute the 'law of the case,' binding alike upon this court as upon the court below."

Therefore, these various obligations of the Chesapeake and Ohio Canal having been recognized and classified as to their respective priorities over each other and in regard to the claim of others, the status thus given to them is binding upon us on this appeal. With respect to the allowance in the audit of the item of $508,647.15, which we will now consider, the principal amount of this claim, and accrued interest, is asserted by the Baltimore and Ohio Railroad Company by virtue of the Act of 1896, ch. 136½, and the Act of 1900, ch. 270. The history and purposes of this Act have already been recited. This sum of money was allowed as the second of the large items in the audit. The exceptant claimed that this allowance was made in disregard of others who had equal rights in the funds to be distributed, but this is denied by the appellees, who assert that the claims of the appellant do not come within the definition or description of those claims that were to be allowed and paid out of the sums of money to which the State of Maryland was entitled, and this has in it a great deal of force. There is nothing in the proceedings to show that these several notes, aggregating $1605, are possessed of the characteristics that are necessary to bring them within the Acts, above mentioned; on the contrary, these notes were all dated about thirty-five years previous to the period, January 1st, 1877 to January 1st, 1890, in which the labor and material must have been furnished in order to comply with the provisions of the Acts of 1896 and 1900.

To the contention that the appellant was not afforded an adequate opportunity to describe, or classify, or assert, his claims, the answer is that at no time did he take any affirmative action to accomplish this purpose, and on the face of the record, their position, with respect to the claims that were allowed in the audit, is definitely established. But suppose this case were remanded for the purpose of

enabling the appellant to take testimony with respect to his rights and priorities, what could be accomplished? This court, as already pointed out, has stated that this very judgment could not take precedence to the claims, or liens, of the State of Maryland on the property embraced in the mortgages to the State. *Brady v. State, supra; The Canal Company's Case, supra.* And, as herein pointed out, all of these notes are dated long before the period (1877 to 1890) in which the claims for labor and material must have been contracted (Act of 1896, ch. 136½), in order to give them precedence over the claims of the State of Maryland. It can serve no purpose to remand this case in order to give to the appellant an opportunity to present and define the character or nature of his claim. The auditor, no doubt, was well informed as to all these matters, and did not allow these claims in preference to those of the State of Maryland, or its assignee. A large number of claims defined by the Acts were acquired by assignment by the Baltimore and Ohio Railroad Company, and these claims were filed with the auditor and listed by him and allowed. It is pointed out that this exceptant is not injured by the allowance of these claims because, if they were not allowed, the distribution on account of the mortgage of $2,000,000, held by the Baltimore and Ohio Railroad Company by assignment, would be, to the extent of these claims, increased, because, according to the statute, the payment of the claims comes out of the funds to which the State was entitled, and the Baltimore and Ohio Railroad Company having acquired this large mortgage of $2,000,000, its distributive share thereof was decreased by the sum or $508,647.15, and, unless we hold that the claims of the appellant have a preference over this mortgage, the appellant could not have benefited by failure to allow to the Baltimore and Ohio Railroad Company this sum of $508,647.15. It is contended by the appellees, and properly so, that the claims of the appellant show upon their face that they come neither within the provisions of the Act of

1896, or the Act of 1900, or that the Acts apply to them in any particular. The record is entirely lacking in proof as to the status of the appellant's claims, or the things for which he contends, outside of the statement in his exceptions. If he desired to offer proof of his claims, and their status, a seasonable application to the court for permission to take testimony would doubtless have been granted, but nothing of the kind appears in the record. We find no error in the action of the court in ratifying the audit in so far as it concerns this allowance.

With respect to the third of these large items of indebtedness, namely the mortgage for $2,000,000, given in pursuance of the Act of 1834, ch. 231, and recorded in Liber P. P., Folio 738, and thereafter confirmed by a mortgage dated January 8th, 1846, and given in consequence of the Act of 1844, and recorded in Liber I. N. No. 3, Folio 137, and acquired by mesne assignments by the Baltimore and Ohio Railroad Company, there is less to be said with respect to this mortgage than the other items above discussed and allowed in the audit. After the allowance for the bonds of 1878, and interest, and for the claims acquired by the Baltimore and Ohio Railroad Company under the Acts of 1896 and 1900, and the setting aside of the $200,000, herein referred to, there were insufficient funds to pay this mortgage in full but there was allowed on account thereof $1,062,641.07. The Court of Appeals of this State has definitely said that this mortgage was a first lien upon the property and assets of the Canal Company and is such unto this day, except in so far as its priority and lien has been waived in favor of the bonds of 1844, and more specifically and fully with regard to the bonds of 1878. It was also waived as to the aforesaid claims mentioned in the Acts of 1896 and 1900. With respect to the bonds of 1844, amounting to $1,700,000, the Auditor did not allow anything on them and assigned as a reason that, "under a certain mortgage dated June 5, 1848, given by the Chesapeake and Ohio Canal Company in pursuance of an

Act of 1844, ch. 281, to secure an issue of bonds amounting to $1,700,00.00, and in accordance with the opinion of Chief Judge Alvery, in the *Consolidated Canal Cases* (*State v. Brown*), reported in 73 Md. 484, 567, 21 A. 374, and the opinion of the Court of Appeals of Maryland, in said *Canal Cases,* reported in 83 Md. 549, 35 A. 161, 354, 581 * * * that the lien of said bonds is limited to the net revenues and tolls of the Canal Company and is not a lien on that property, rights and franchises, and since the funds being here distributed arise solely from the sale of property rights and franchises, he has made no distribution to said bonds."

There is no exception to the audit with respect to this question. The mortgage has been classified as to its preference with respect to the claims against the Chesapeake and Ohio Canal Company, and its allowance by the auditor in the order indicated in his account was proper. In that respect the chancellor did not err in ratifying the audit. The contention of the appellant that the transactions, in which the property was either disposed of, or mortgaged, was entirely beyond the scope of authority of the corporation, we do not have to pass upon, for this Court of Appeals, as above indicated, has already recognized all of these as subsisting obligations and has further stated that the disposition of the court in these cases constituted the law of the case and binding upon us and upon the lower court. From what we have said it is obvious that the decree from which this appeal is taken should be affirmed.

*Decree affirmed, with costs.*