# JOHN F. McGRAW

*vs.*

# N. BOSLEY MERRYMAN, Treasurer of Baltimore County.

*Constitutional law: province of courts and legislature. Extension of limits of Baltimore City: referendum; Daly v. Morgan. Decisions of Court of Appeals: on what points authoritative. Annexation Act of 1918, Chapter 82; tax provisions constitutional.*

In the absence of constitutional prohibition, it is for the Legislature to say whether or not there shall be a referendum in reference to the extension of the limits of a city or town.
p. 255

Where a statute is within the constitutional powers of the Legislature, its exercise can not be reviewed or controlled by the courts.                                              p. 250

The case of *Morgan* v. *Daly,* 69 Maryland, 460, is affirmed, as holding that the Legislature can extend the limits of Baltimore City with or without the consent of the majority of the voters in the districts to be annexed.            p. 257

All that is necessary to render a decision of the Court of Appeals authoritative on any point decided is to show that there was an application of the judicial mind to the precise question adjudged.                                      p. 257

The fact that Chapter 82 of the Acts of 1918 annexes a portion of Anne Arundel County to Baltimore City does not make the Act unconstitutional; the lines of the proposed extension include all that part of Baltimore County between Anne Arundel County and those of the city, and leave no intervening space.

While the general rule is that land can not be annexed to a city or town unless it be contiguous thereto, it is not necessary that each tract of land, sought to be annexed, should be contiguous to the municipality; if all the tracts are contiguous to each other, and one of them adjoins the city, it is sufficient.

p. 259

Chapter 82 of the Acts of 1918 is not in conflict with Article 16 of the Constitution (with the referendum provisions), because of its effect on taxes levied prior to June 1st, 1918, the date when the Act went into effect, because the tax provisions of the Act attempt only to affect the proportion of taxes from January 1st, 1919, to the end of the fiscal year. p. 261

The principle of equality in taxation required by the 15th Article of the Declaration of Rights is gratified by making local taxation equal and uniform within the limits of taxing districts. p. 261

The same power which authorizes the Legislature to make one taxing district of an entire city, equally authorizes it to make two or more taxing districts if in its judgment public interest requires it. p. 262

The provisions of the Act of 1918 for Baltimore City to take over the public property in the annexed districts have no reference to property that either county may have bought in at public sale. p. 263

*Decided July 30th, 1918.*

Several appeals from the Circuit Court for Baltimore County. (McLANE and DUNCAN, JJ.)

Appeal also from the Circuit Court for Anne Arundel County. In Equity. (MOSS, J.)

The facts are stated in the opinion of the Court.

The causes were argued together before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Henry H. Dinneen* (with whom were *W. Stuart Syming-ton, Jr.,* and *John F. Thomas* on the brief), for McGraw and others, appellants.

*Benjamin A. Richmond* and *S. S. Field, the City Solicitor,* (with whom were *Henry D. Harlan, W. Calvin Chesnut* and *Daniel R. Randall* on the brief), for Baltimore City.

*Shirley Carter, W. Irvine Cross* and *T. Scott Offutt* (with whom were *Edward H. Burke* and *Carville D. Benson* on the brief), for Merryman and the County Commissioners of Baltimore County.

*Ridgely P. Melvin, Stevenson A. Williams* and *Isaac Lobe Straus* (with whom were *Venable, Baetjer & Howard* on the brief), for Anne Arundel County, appellee.

Boyd, C. J., delivered the opinion of the Court.

At the last session of the General Assembly of Maryland there was passed "An Act to extend the limits of Baltimore City by including therein parts of Baltimore County and Anne Arundel County," it being Chapter 82 of the Acts of 1918. The validity of the Act has been attacked on several grounds—the principal one being that there is no referendum in it, as the appellees contend section 1 of Article 13 of our State Constitution requires. Although there are five appeals from orders and decrees passed by the Circuit Court for Baltimore County and one from a decree of the Circuit Court for Anne Arundel County, the main questions are involved in all of them. The cases were at the request of the attorneys for the respective parties advanced by us, and were heard together. As no question was raised in any of them as to the procedure adopted, it will be unnecessary to make further reference to that.

Much stress was laid by the attorneys for the appellees upon the alleged injustice of this Act, but no one will challenge the rule by which we must be guided in our considera-

tion of these appeals, that if the Legislature had the power to pass the Act before us without a referendum, and in the form it was passed, this Court has no right to call in question the wisdom or even justice of it. As said by JUDGE GRAYSON in *Groff* v. *Mayor, etc., of Frederick,* 44 Md. 67, in a case involving the validity of an Act extending the limits of Frederick City, after referring to the power of the Legislature to create municipal corporations, to amend their charters, enlarge or diminish their powers, extend or limit their boundaries, etc.: "The Legislature having this constitutional power, the exercise of it is wholly within its discretion, and it can in no wise be controlled by the courts," and he concluded that opinion by saying: "Whether the power was wisely or unwisely bestowed, or the mode in which it has been exercised is just or unjust, and burdensome upon the citizen, are questions with which the courts have no right to deal, but are within the exclusive control of the Legislature." But the rule is too universally adopted by this and other Courts to require other citations of authorities, and we will proceed at once to the consideration of such questions as should be passed on by us.

The one that first presents itself, and is of the gravest importance, is the scope and effect of the decision in *Daly* v. *Morgan,* 69 Md. 460. In that case the constitutionality of Chapter 98 of the Acts of 1888, which was entitled, "An Act to extend the limits of Baltimore City by including therein parts of Baltimore County," was before the Court. There was a referendum in that Act, and the question of annexation was submitted to the respective voters of the three parts of Baltimore County proposed to be annexed to Baltimore City. In two of them a majority was declared to be in favor of annexation, and in the others it was against it.

In Article 13 of our State Constitution, entitled "New Counties," section 1, which was then in force, and still is, authorizes the Legislature to provide by law for organizing new counties, locating and removing county seats and chang-

ing county lines, and contains this provision: "nor shall the
lines of any county be changed without the consent of a
majority of the legal voters residing within the district,
which, under said proposed change, would form a part of a
county different from that to which it belonged prior to said
change." It is contended by the appellees that that provi-
sion applies here, as it is proposed to change the lines of the
two counties, although the district affected is to form a part
of Baltimore City, while the appellants contend that it only
applies to a change of lines of a county which would transfer
the district to another county, and that it does not apply
when the district, under the proposed change, would form a
part of Baltimore City. But we must first determine
whether this Court decided that question in *Daly* v. *Morgan,*
and if so, are we bound by it as a controlling authority?

The bill of complaint in that case, in speaking of the Act
of 1888, alleged that, "the Act aforesaid is null and void,
because the Constitution of Maryland gives no power to the
Legislature of Maryland to annex any of the territory of a
county to the City of Baltimore, nor does it empower said
Legislature to make the annexation of said territory depend
upon the majority of the votes cast at an election provided
for by legislative enactment," etc. The answer of the Mayor
and City Council of Baltimore alleged that the Act was a con-
stitutional and valid exercise of the legislative authority of
the State, and that of the Treasurer of Baltimore County
averred that the Act was wholly and utterly void, etc.

The argument of Colonel McIntosh and of Mr. Mitchell,
solicitors for appellant in that case, as shown by their briefs,
was that section 1 of Article 13 was the only provision in
the Constitution which authorized a change of the lines of a
county, and that only authorized such change when the dis-
trict proposed to be changed would "form part of a county
different from that to which it belonged prior to said change,"
and that that was not synonomous with and in ordinary par-
lance did not mean "form part of a city or Baltimore City

different from," etc.  They argued that there was therefore
no power in the Legislature to change the lines of the county
to annex it to Baltimore City.  They also contended that the
Act of 1888 did not conform to the requirements of section 1
of Article 13, if held to be applicable, because the latter re-
quired the consent of the majority of the legal voters resid-
ing within the district, while they claimed that the Act only
required a majority of the votes cast.

We find in the records of this Court that there are bound
with the briefs for the appellant (Daly) opinions of Colonel
Marshall, JUDGE FISHER and Mr. S. Teackle Wallis, presum-
ably with the consent of the Court, which are mostly on the
validity of section 19 of Act of 1888, providing for taxation.
There are, however, some expressions of views on the neces-
sity of a referendum.  JUDGE FISHER's opinion, which was
addressed to the attorney for the County Commissioners of
Baltimore County, shows that one of the questions submitted
to him was: "Can the limits of the city be extended by
legislative enactment without submission to the voters in the
territory to be annexed?" and apparently the same question
was asked Mr. Wallis.  Both of them answered in the nega-
tive, but the latter said it was "extremely doubtful" whether
it was competent for the Legislature to annex the territory of
Baltimore County, constitutionally, to Baltimore City in any
way.

The brief of the city was for the most part confined to a
discussion of section 19 of the Act.  It concluded by saying
that there was appended to it the legal opinions given before
the election by Messrs. Steele, Gwynn and Findlay "which
furnish additional arguments to those we have presented in
favor of the constitutionality of the City Extension Act, and
which we respectfully commend to the consideration of the
Court."  Those of Messrs. Steele and Gwynn were confined
to the validity of section 19, which seems to have been under-
stood by the city to be the principal ground of objection to
the Act, but that of Mr. Findlay very clearly and emphat-

ically took the position that Article 13 did not apply to the city, and that the Belt could have been annexed by a legislative act without a popular vote. He dwelt on that at some length, and made the prediction that if annexation was voted down it would be the last time that it would be submitted to the voters, as such an Act could be passed without a referendum.

We have thus referred to the briefs and opinions of prominent attorneys, filed with them by the respective parties, to show how far the attention of the Court was directed by them to the question whether it was necessary to have a referendum. As we have seen, another of the grounds relied on by the appellant for the Act being invalid was that it did not comply with the requirements of section 1 of Article 13 in reference to the submission of the question of annexation. It may be that a sufficient answer to that might have been the decision in *Walker* v. *Oswald,* 68 Md. 146, although Col. McIntosh sought to distinguish the two cases, but if the constitutional provision did not apply, and it was not necessary to submit the question to the people, there could not well have been a more complete answer to the contention and to the allegation in the bill that it was not submitted as required by that provision than to hold that an Act for annexation to the city could be passed with or without the consent of the people, for if that be so, and the Legislature chose to submit it, it could determine the terms, etc., of the submission, and hence it was immaterial whether the Act of 1888 complied with section 1 of Article 13.

But let us see just what the Court did decide, and what the judges thought they were called upon to decide. Seven judges sat in that case. JUDGE ROBINSON delivered the opinion of the Court, and JUDGES STONE, MILLER, IRVING and McSHERRY concurred in it. JUDGES ALVEY and BRYAN concurred in the affirmance of the order appealed from, but differed in some of the conclusions reached by the majority, of which we will speak later. The Court, through JUDGE ROBINSON, said: "The power of the Legislature to extend the

limits of a city, by including therein parts of the county adjoining, when the city itself is a part of the county, is not and can not be questioned. It is contended, however, that Baltimore City being a separate and independent territorial division of the State, and not a part of Baltimore County, the Legislature has no power to change the lines of the county by annexing part of its territory to the city. And in support of this contention, the appellant relies entirely upon section 1 of Article 13 of the Constitution."

The part of that section which we have quoted above was then set out in the opinion, which calls attention to the fact that "it does not say, as has been argued, that the lines of a county shall not be changed *except it be for the purpose* of annexing parts of one county to another county. It merely provides that when the lines of a county are to be changed for this purpose, it must be done with the consent of a majority of the voters residing within the district to be annexd."

The Court then uses this emphatic language, which can leave no doubt as to its construction of section 1 of Article 13: "The object, and sole object, of this provision of section 1 was to provide for the annexation of parts of one county to another. The entire section in fact, and the article in which it is to be found, deals exclusively with the organization of *'new counties,' 'the location of county seats,' and the mode* by which parts of one county may be annexed to another county, *and the limitation imposed upon the legislative power is in respect of these matters and these only.*" (Last italics ours.)

The opinion then pointed out some of the distinctions between counties and towns and cities, and, in speaking of the latter said: "They are chartered by the Legislature, and their boundaries are fixed by it, and the power to extend them; whenever in its judgment the public interests require it, has been exercised by the Legislature from the earliest days of the colony."

It then concludes the discussion of that question by saying: "No one knew better than the framers of the Constitution of 1867, that the time must come, and that not far distant, when

the extension of the limits of a great city like Baltimore would be absolutely necessary to its proper growth and development. And if they meant to deny the exercise of this power by the Legislature, and to say that its limits as then defined by its charter should for all time remain the same, it is but reasonable to presume that this intention would have been declared in plain and explicit terms. So far from being expressly declared, there is nothing either in the language or terms of this section from which such an intention can be inferred. The Legislature has, therefore, in our opinion, the same power now which it has always exercised, to extend the limits of Baltimore City by including therein parts of Baltimore County, and this too, *with or without the consent* of the majority of the voters residing within the districts annexed."

The appellees make special objection to the latter expression, but that was manifestly the necessary result of what had already been clearly and definitely settled in the opinion, as shown above. In the absence of a constitutional prohibition, there can be no doubt under the authorities that it is for the Legislature to say whether or not there shall be a referendum in reference to the extension of the limits of a city or town. "Not only may the Legislature originally fix the limits of the corporation, but it may, *unless specially restrained in the constitution, subsequently annex,* or authorize the annexation of, contiguous or other territory, and this without the consent, and even against the remonstrance of the majority of the persons residing in the corporation or on the annexed territory" * * * "The power to enlarge the boundaries of a municpality by the annexation of contiguous territory is an incident to the legislative power to create and abolish municipalities at pleasure." 1 *Dillon on Mun. Cor.* (5th Ed.), sec. 355.

See also 1 *McQuillin on Mun. Cor.,* section 265, where many authorities are cited: *Johnson* v. *Luers,* 129 Md. 521, 530; *In re Pittsburgh,* 217 Pa. 227, affirmed in *Hunter* v. *Pittsburgh,* 207 U. S. 161. The Court having held that section 1 of Article 13 did not apply, and there being no other restriction in the Constitution, that conclusion would neces-

sarily have meant that the Legislature could act *with or without the consent* of the majority of the voters, even if that expression had been omitted from the opinion, unless the Court had placed itself in conflict with the practically unanimous decisions of other courts and our own.

How then can it be said that the expression objected to was an *obiter dictum,* or that the question is not *res adjudicata?* JUDGE BRYAN filed an opinion in which he concurred in the conclusion reached by the five judges, but differed with them as to whether it was necessary to have the consent of the voters. He did not suggest that it was an *obiter dictum,* but based his opinion on what he deemed to be the proper construction of section 1 of Article 13. The reason he thought that the Act of 1888 would have been unconstitutional, had it not required the consent of a majority of the local voters, was that under his construction of that section it was applicable to Baltimore City, which, in construing the section, was to be considered and treated as a county. That is precisely contrary to what the majority of the Court held. He did not intimate that he thought the use of the expression referred to was unwarranted or even unnecessary, if the construction of section 1 of Article 13 by the majority was correct. So in JUDGE ALVEY's opinion on that subject. The most of his opinion was devoted to a discussion of section 19 of the Act, but he also concluded that section 1 of Article 13 was applicable, and of course under his construction of that section he thought "the popular election was an indispensable condition."

It will be noticed that the two dissenting opinions were filed the same day the case was decided (Nov. 23, 1888), which indicates that the majority not only had the views of the dissenting judges, but their written opinions before them, in which the attention of the majority was expressly directed to the question of the necessity for the consent of the voters. If it had been simply a passing remark by the learned judge who wrote the opinion, without due consideration having been

previously given to it by all the members of the Court, and it
was not thought proper that it should be mentioned in the
opinion, it is impossible to conceive that such men as then
constituted this Court would not have avoided any question
about it, by striking out that sentence, but all of them *must
have known* that whether the expression criticised was *in or
out* of the opinion, it was unquestionably *the necessary* result
of the construction placed on section 1 of Article 13 by the
majority.

In view of what we have said, we do not deem it necessary
to quote at length from the decisions of this Court as to what
should be deemed binding in later cases, but in *Alexander*
v. *Worthington,* 5 Md. 471, 489, the question was discussed
at length in an opinion delivered by Chief Judge LeGrand,
and he concisely stated the rule to be that: "All that is neces-
sary in Maryland to render the decisions of the Court of
Appeals authoritative on any point decided is to show that
there was an application of the judicial mind to the precise
question adjudged; and this we apprehend is the rule else-
where." That was approved in *C. C. & I. Co.* v. *Sherman,*
20 Md. 117, 131; *Michael* v. *Morey,* 26 Md. 239, 261; *State*
v. *Cowen,* 94 Md. 487, 495; *Carstairs* v. *Cochran,* 95 Md.
488, and other cases. That rule is not only applicable here,
but in our judgment the decision of the question as to a
referendum was directly involved in what was necessarily
decided. We are, therefore, of opinion that *Daly* v. *Morgan*
is a binding authority upon us, and we can not properly
decline to follow it.

We do not deem it necessary or proper to again construe
section 1 of Article 13 of the Constitution. If we did so,
there would be as much, if not more, ground for the conten-
tion that our decision was *obiter dictum,* than there is for
what was said in *Daly* v. *Morgan.* We certainly would not
be justified in overruling that decision, as much of the argu-
ment for the appellees was directed to having us do, even if

we differed with the majority, which, we will only add, must not be inferred by reason of our declining to construe section 1 of Article 13.

But it was argued that the decision in *Daly* v. *Morgan* was limited to Baltimore County, and hence is not applicable to this case. We find nothing in that opinion to sustain the position that parts of Baltimore County could be annexed to Baltimore City, but no part of any other county could be. In that case the extensions were into Baltimore County, and that county alone was the one then being considered. The statement in the opinion referred to by the appellees that, "The Legislature has, therefore, in our opinion, the same power now which it has always exercised, to extend the limits of Baltimore City by including therein parts of Baltimore County," can not properly be said to have been intended to limit the right to extend the boundaries of Baltimore City into that county. It is said in the brief of the city that its limits had been extended into that county by ten different Acts, all of them being while the city was still in Baltimore County. We have not thought it necessary to examine all of the Acts referred to, but we know from the records of this Court that the limits had been extended, more than once, into Baltimore County, the last time prior to the Act of 1888 having been in 1816, and no inference can be drawn from the statement in the opinion quoted above, that they could not be extended so as to include part of some other county, but it meant what it in effect said, that the Legislature had the same power to extend the limits "now"—that is to say, in 1888, when the present Constitution was in force—as it had when the city was a part of the county.

It was also argued that, as Anne Arundel County is separated from the city by a part of Baltimore County, and is not contiguous to the city, this Act for that reason can not be sustained, even if full effect be given to *Daly* v. *Morgan.* Baltimore City is, for a considerable distance, on the opposite shore of the Patapsco River from the lands of Anne Arundel County, and it was decided in *Raab* v. *State* 7 Md.

483, that the Act of 1816, Chapter 209, extending the boundaries of that city, limited its lines to the north side of the river, thus leaving the portion of the river between the north shore line and the current (to which the Anne Arundel County line extended) in Baltimore County. Although it was intimated in *West. Md. T. R. Co.* v. *Baltimore City*, 106 Md. 561, that but for that decision we might have held the contrary, we expressly declined to overrule it. But treating the boundaries of Baltimore County as inclusive of the space in the river between the Anne Arundel County line, in the current of the river, and that of the city, this Act can not be held to be invalid for that reason. The lines of the proposed extension include all of that part of Baltimore County between the Anne Arundel lines and those of the city, and there is no intervening space. There is no statute or constitutional provision in this State, limiting an extension of the boundaries of a city to contiguous territory, as there is in some States, although it may be conceded that some part of the newly acquired territory should be contiguous. As will be seen from the cases collected in the notes to *Morgan Park* v. *Chicago* (255 Ill. 190, 99 N. E. 388), in Ann. Cas. 1913D, 399, "The annexation of outlying territory to a municipality is commonly conditioned, by the statute authorizing the proceeding, on the situation of the territory to be annexed, it being required to be adjacent or contiguous to the municipality," but proper limitations of the rule are given in that note, where it is said, that "While the general rule is that land can not be annexed to a city or town unless it is contiguous thereto, it is not necessary that each and every tract of land sought to be annexed shall be contiguous to the municipality. If all of the tracts are contiguous to each other, and one of them is contiguous to or adjoins a city, that is sufficient." For that statement a number of cases are cited, and the same rule is stated in 19 R. C. L. 734, Sec. 40, and other authorities, but if we had found none on the subject, we could have no doubt that such should be the rule.

Having reached the conclusion, as all of us have, after attentively listening to the able and thorough arguments of the attorneys, and after having given to them and the questions involved such consideration, thought and study as their importance demands, that *Daly* v. *Morgan* is a binding and authoritative decision, and that it was there determined by this Court, as then constituted, that Sec. 1 of Art. 13 of the Constitution did not apply to an extension of the limits of the City of Baltimore, and there being no other constitutional or statutory provision affecting it, there can be no valid ground for holding that an extension which affects the lines of the two counties can not be permitted. As it was there held that the provision as to the change of lines of the county did not apply to a change for the purpose of extending the limits of Baltimore City, it can make no possible difference that parts of two counties are affected, instead of only one. It was even suggested at the argument that such a conclusion would authorize an annexation to Baltimore of some part of a remote county, but we can not think that such a suggestion would be made on more serious reflection, and if it should ever be attempted, nothing that we have said can be relied on to sustain it. In this Act there are well defined lines which include additional territory on each side of and immediately adjoining the former boundaries of the city—the most of which was in Baltimore County and the rest in Anne Arundel County, which adjoins Baltimore County—and the whole, together with the territory included in the city prior to the passage of this Act, constitute one body.

It was also urged upon us that we should not feel bound to follow *Daly* v. *Morgan* because of the great injustice that will be done the two counties and the people within the annexed territory. But as we have already stated, for whatever injury the two counties or the people in the annexed territory may sustain, the responsibility rests upon the Legislature, and *not upon this Court*. If this Court should reverse one of its prior decisions which was so deliberately rendered, on a question of such vast importance as to demand of every

Judge who sat his fullest consideration and best judgment, as we have endeavored to show was done in *Daly* v. *Morgan,* because we felt that it worked a great hardship and possible injustice, not only would the principle of *stare decisis* have to be ignored, but it would have a tendency to cause decisions of Courts to be regarded as unstable and vacillating—depending upon the individual views of the Judges who happened to constitute the Court when such questions arose.

It is also suggested that the Act is in conflict with Article 16 of the Constitution—the article on referendum—because it undertakes to affect taxes levied prior to June 1st, when the act under that provision of the Constitution took effect, but it only attempts to affect the proportion of taxes from January 1st, 1919, to the end of the pending fiscal year, and does not seem to require further comment.

We will not discuss at length the objection made to the Act on account of the provisions in reference to taxation. Most of the argument on that subject is met by the decision in *Daly* v. *Morgan.* That case has been cited over and over again in cases involving taxes since Chapter 98 of the Act of 1888, and subsequent Acts in reference to taxation of property within the Belt. It is there held that the principle of equality in taxation was fully gratified by making local taxation equal and uniform as to all property within the limits of the taxing district, and hence the 15th Article of our Declaration of Rights was not violated by the Act of 1888. Judge Alvey dissented, but the other six Judges who sat were of the opinion that the Act was valid. Chief Judge McSherry said in *Sindall* v. *Baltimore City,* 93 Md. 526: "It must be borne in mind that at the date of the adoption of the Annexation Act a large part of the added territory was unimproved, outlying rural land. It would have been manifestly unjust to have subjected such property to the same valuation and to the same rate of taxation as then obtained in the city with respect to distinctly urban property."

In *Baltimore City* v. *Gail,* 106 Md. 684, Judge Burke quoted from Judge Robinson's opinion in *Daly* v. *Morgan,*

69 Md. 460, and from CHIEF JUDGE McSHERRY's in the above case to the same effect. In *Miller* v. *Wicomico County,* 107 Md. 438, JUDGE BRISCOE referred to *Daly* v. *Morgan,* and said: "The same power which authorizes the Legislature to make one taxing district of an entire city, equally authorizes it to make two or more taxing districts, if in its judgment the public interest require it."

But as it would seem clear that even if the position taken by the appellees on the question of taxation be conceded to be correct, it would not invalidate the whole Act, it is unnecessary to continue the discussion of the subject. Not only did JUDGE ALVEY take that position in his dissenting opinion in *Daly* v. *Morgan,* but JUDGE ROBINSON, also in speaking for the majority, did so in effect. The case of *Steenken* v. *State,* 88 Md. 708, cited that case, amongst others, on that question. If that be correct in a case where the question had been submitted to the people, there is all the more reason why it should be so in this case where it was not submitted.

The question in reference to the part of the Act which has a saving clause as to certain officers who reside within the annexed territory certainly can not affect the rest of the Act. Nor do we find anything in the Act to justify the contention that it is taking property without just compensation, or without due process of law. It is said that Baltimore County owns a number of properties within the annexed district which it had purchased under tax sales. But the provisions for Baltimore City taking over the public property can not be construed to mean such property as that. It only means such as is held for public purposes, and not any property that either county may own that does not come in that class.

The rule is thus stated in 1 *Dillon on Mun. Cor.* (5 ed.) Sec. 360: "Upon the annexation of part to another corporation, *the legislature may provide* for an *equitable apportionment or division* of the property, and impose upon the new corporation, or upon the people and territory, thus disannexed, the obligation to pay an equitable proportion of the corporate debts. But there is usually no constitutional re-

quirement that the legislature shall make such provision, and in the absence of such requirement it may provide for the annexation of territory to a municipality and the transfer to it of such public property as may be within the territory annexed, without imposing upon the municipality any obligation either to pay for the property so transferred or to assume and pay for any portion of the unpaid debts contracted in the acquisition or erection of buildings and other property transferred."

As will be seen from Sections 358, 359 and the rest of 360 of that volume, it is generally held that, in the absence of a constitutional provision, the Legislature makes the disposition of public property.

In *Hunter* v. *Pittsburgh,* 207 U. S. 161, 52 L. Ed. 151, which affirmed *In re Pittsburgh,* 217 Pa. 227, 66 At. 348, the question is considered at some length, in reference to property held and used for governmental purposes. But if there be any property owned by either of the counties, in addition to that held and used for governmental purposes, for which it can be said proper provision has not been made, that would not require the portion of the Act providing for the annexation to be set aside. Without attempting to refer to other points which have been raised, we are of the opinion that all of the cases before us must be reversed.

> *Order reversed and cause remanded, in order that a mandamus issue as prayed, the costs to be paid by the County Commissioners of Baltimore County.*