## 17733

Robert S. TOVEY *et al.*, in their own behalf and others similarly situated, Appellants, v. CITY OF CHARLESTON, City Council of Charleston and J. Palmer Gaillard, Mayor of the City of Charleston, Respondents. Milton F. NELSON *et al.*, in their own behalf and others similarly situated, Appellants, v. CITY OF CHARLESTON, City Council of Charleston, and J. Palmer Gaillard, Mayor of the City of Charleston, Respondents.

(117 S. E. (2d) 872)

*Paul H. Lee, Jr., Esq.,* of Charleston, *for Appellants,*

*Messrs. Morris D. Rosen, Henry B. Smythe* and *J. Kenneth Rentiers,* of Charleston, *for Respondents,*

January 10, 1961.

OXNER, Justice.

This litigation stems from an effort to extend the corporate limits of Charleston, the State's oldest and most historic city. There has been no change in its boundaries since 1849.

It was sought to annex certain areas designated as "A", "B", "C", "E" and "F", all of which are within St. Andrews Public Service District. A petition was duly submitted to the City Council of Charleston by a majoirty of the freeholders of each area asking that an election be ordered on

the question of annexing such area. A special election was held on May 9, 1960 in which the qualified electors of the City of Charleston and the qualified electors of each area voted on the question of whether such area should be annexed. To extend the corporate limits of a municipality, it is necessary under the statute that "a majority of the votes cast by the qualified electors of the municipality and of the territory proposed to be annexed, each aggregated separately," be in favor of the annexation. Section 47-17 of the 1952 Code. Although not disclosed by the record, it was stated in oral argument that the elections in areas "B" "D", "E" and "F" resulted unfavorably to annexation. The vote as to areas "A" and "C" was favorable. Thereafter on May 16, 1960, these two areas were declared by the City Council of Charleston to be a part of said municipality. Due notice was given of an intention to contest each annexation. Thereafter on August 8, 1960 an action was brought by certain qualified electors and taxpayers of area "A", seeking to have the annexation of said territory declared null, void and of no effect and to enjoin the City Council of Charleston from exercising any authority with respect thereto. On the same day a similar action was brought by certain qualified electors and taxpayers of area "C". The two cases were consolidated and heard by the resident Judge of the Ninth Circuit on August 24, 1960. In an order filed on September 3, 1960, he held that each of these areas was properly annexed to the City of Charleston and dismissed the complaints. This appeal followed.

In their first ground of attack upon the validity of the annexation, appellants contend that the St. Andrews Public Service District is a municipal corporation, and that therefore no part of it may be attached to another municipality without submitting the question to all the voters in the district. We have held that under our statutes governing extension and reduction of corporate limits, a portion of one municipality may not be annexed to another without submitting the question of said detachment

to the voters of the municipality whose area is to be reduced. *Town of Forest Acres v. Seigler,* 224 S. C. 166, 77 S. E. (2d) 900; *Town of Forest Acres v. Town of Forest Lake,* 226 S. C. 349, 85 S. E. (2d) 192. It is conceded that the question of annexation was submitted to the voters of only those portions of St. Andrews Public Service District that were proposed to be annexed; that it was not submitted to the voters of the entire district; and that the corporate authorities of said district were never consulted. Therefore, the answer to the question presented depends upon whether this district is a municipal corporation within the contemplation of our annexation statute. It was created by Act No. 443 of the 1949 Acts of the General Assembly, 46 Stat. at Large 1015, and empowered to operate water and sanitary sewer systems, furnish fire protection facilities and provide garbage collection and disposal within the territory embraced in the district. It was authorized to make service charges for some of these facilities. Other funds necessary to carry out its corporate purposes and functions were to be raised by annual levy on all property in the district. Certain other duties and functions were given the district but the foregoing are sufficient to show its general nature and purpose.

The term "municipal corporation" ordinarily applies only to incorporated cities, towns and villages having subordinate and local powers of legislation. As stated in 1 Dillon, Municipal Corporations, 4th Edition, Section 19: "A municipal corporation, in its strict and proper sense, is the body politic and corporate constituted by the incorporation of the inhabitants of a city or town for the purpose of local government thereof." However, at times the term is used in a broader sense to include every corporation formed for governmental purposes so as to embrace counties, townships, school districts and other governmental subdivision of the State. *Gaud v. Walker,* 214 S. C. 451, 53 S. E. (2d) 316.

It is true, as appellants argue, that special districts created for the purpose of furnishing water, sewerage, garbage collection, fire protection and other similar facilities, functions

usually performed by incorporated towns and cities, have been referred to in some of our cases as municipal corporations with limited functions and have been held to be municipal corporations within the meaning of certain sections of our Constitution. *Rutledge v. Greater Greenville Sewer District,* 139 S. C. 188, 137 S. E. 597; *Floyd v. Parker Water and Sewer Sub-district,* 203 S. C. 276, 17 S. E. (2d) 223; *Sanders v. Greater Greenville Sewer District,* 211 S. C. 141, 44 S. E. (2d) 185; *Mills Mill v. Hawkins,* 232 S. C. 515, 103 S. E. (2d) 14. But it does not follow that such special purpose districts are to be regarded as municipal corporations in the primary sense of the term so as to bring them within all of our statutes and constitutional provisions pertaining to incorporated towns and cities.

Turning now to our statute relating to the extension or reduction of the corporate limits of a municipality, Sections 47-11 to 47-24, inclusive, of the 1952 Code, it seems quite clear that this statute applies only to incorporated cities and towns. Section 47-11 reads: "Any city or town council may extend the corporate limits of such city or town in the manner set forth in this article." It is expressly stated in Section 47-24: "The word *'municipality'* as used in this article shall be construed to mean any incorporated city or town located within this State." Section 47-23 provides that "whenever a petition is presented to a city or town council" by a majority for the freeholders residing therein asking for a reduction of the corporate limits, an election shall be ordered and if a majority of the qualified electors vote in favor of the release of the territory, "then the council shall issue an ordinance declaring the territory no longer a portion of the city or town." Clearly "city or town council" referred to in this statute means the corporate authorities of an incorporated town or city.

It is further contended that even if this district is not a municipal corporation within the meaning of our annexation statute, it is corporate territory organized under an act of the General Assembly whose area cannot be

reduced nor its boundaries changed by annexing a part of it to an adjacent city or town. We have no statute or constitutional provision prohibiting a city from annexing territory lying within a governmental subdivision organized for a special purpose and we have found no decision holding that such territory may not be annexed. *Town of Forest Acres v. Seigler, supra,* 224 S. C. 166, 77 S. E. (2d) 900, cited by appellants, is not apposite for it was there sought to annex a portion of a municipality. In *Wagener v. Smith,* 221 S. C. 438, 71 S. E. (2d) 1, we held that the fact that the Legislature had established a township form of government for a certain area with powers similar to those devolved upon towns of similar size did not prevent the inhabitants of said area from thereafter incorporating same as a town under the general law. It would seem that under this decision the establishment of a special purpose district would not prevent an adjacent city from later annexing a part thereof. In some areas of the State there are overlapping special purpose districts. Some of them extend into incorporated towns and cities. Most of our large municipalities are surrounded by such districts. It has never been suggested that this would prevent such municipalities from extending their corporate limits.

In *State ex rel. East Lenoir Sanitary Dist. v. City of Lenoir,* 249 N. C. 96, 105 S. E. (2d) 411, the Supreme Court, of North Carolina held that the City of Lenoir was authorized to extend its boundaries so as to include a portion of the area of a sanitary district. In *Annexation to the City of Anchorage, etc.,* 15 Alaska 67, 128 F. Supp. 717, it was held that the extension of the corporate limits of a municipality is not prohibited merely because the area sought to be annexed constitutes a part of the territory organized as a public utility district. Also, see *Fairfax County v. City of Alexandria,* 193 Va.. 82, 68 S. E. (2d) 101.

It is next contended that the annexation should be declared null and void because the City initiated and partly financed the circulation of the petition by the

freeholders asking that an election be held on the question of annexation. We find nothing in the statute prohibiting such activities.

It is claimed that 321 acres of marshlands owned by the State were included in area "A" which rendered the annexation of that area invalid. No authority has been cited, and we know of none, holding that marshlands cannot be made a part of a town or city. The record does not disclose the owner of this property but the fact that it may be owned by the State would not prevent its annexation to the City of Charleston. *Howard v. Commissioners of Sinking Fund,* 344 U. S. 624, 73 S. Ct. 465, 97 L. Ed. 617. It was there held that the City of Louisville, Kentucky, had the power to annex certain federally owned land upon which was located a naval ordinance plant. The following is from 62 C. J. S. Municipal Corporations § 46, p. 133: "State property may be included in territory annexed to a municipality, as may be territory under exclusive jurisdiction of the federal government."

An attack is made upon the shape of the city if the annexation is permitted to stand. It is said that it would be "so extraordinarily irregular in shape and boundaries" as to preclude that "compactness and unity" required of a municipal corporation. The boundaries of Charleston have always been irregular in shape and necessarily so. Prior to the present annexation, it was a peninsula, bounded on the east by the Cooper River and on the west by the Ashley River. The confluence of these rivers at the south end of the city form Charleston Harbor. Without crossing one of them, extension can only be made to the north. The annexed territory consists of a tract of land about one mile in width extending westerly from the Ashley River a distance of approximately four miles. It is bounded on the north by U. S. Route 17. Area "A" is bounded by the Ashley River on the east and Area "C" on the west.

There is no limitation in our annexation statute as to the extent or shape of the territory which may be annexed and

there is nothing from which any such limitation may be implied. It is a matter left to the determination of the voters of the municipality and the territory proposed to be annexed. There is on charge in this case of fraud or a denial of any constitutional right. A bridge on Route 17 across the Ashley River makes the annexed area readily accessible to the old city. There is no proof that this annexation would cause any difficulties in the administration of the affairs of the city or result in any undue hardship to any citizen. Mere irregularity in shape furnishes no justification for interference by the courts in the determinatton by the voters that an annexation is to be the best interest of both the municipality and the area to be annexed. *City of Burlingame v. San Mateo County,* 90 Cal. App. (2d) 705, 203 P. (2d) 807. *Cp. Bellamy v. Johnson,* 234 S. C. 172, 107 S. E. (2d) 33.

The remaning exceptions relate to contiguity. The statutes of many States require that the land annexed be contiguous or adjacent to the municipal borders. Appellants say that the reference in Section 47-13 of our annexation statute to "adjacent territory" necessarily implies such requirement. Whether this be true or not, it seems to be generally recognized, and is so conceded in this case, that there must be contiguity even in the absence of a statutory requirement to that effect. *McGraw v. Merryman,* 133 Md. 247, 104 A. 540; 37 Am. Jur., Municipal Corporations, Section 27; 62 C. J. S., Municipal Corporations, § 46c. Such is ordinarily essential to make the city a collective body having unity and compactness.

Appellants argue that there is a lack of contiguity in two respects.

First, it is said that contiguity between the boundaries of the old city and area "A" is broken by the Ashley River. The channel of this river was formerly the western boundary of Charleston. The plat of the annexed territory introduced in evidence shows area "A" as extending to the eastern bank of the Ashley River. There is, therefore, no intervening space between the annexed areas and the former

city boundaries. We do not think the fact that they are separated by a navigable stream breaks the contiguity. *Vestal v. City of Little Rock,* 54 Ark. 321, 329, 15 S. W. 891, 16 S. W. 291, 11 L. R. A. 778; *McGraw v. Merryman, supra,* 133 Md. 247, 104 A. 540; *State ex inf. Taylor, ex rel. Kansas City v. North Kansas City,* 360 Mo. 374, 228 S. W. (2d) 762. As heretofore pointed out, this river is spanned by an excellent bridge and there is no reason why the two areas cannot make a homogeneous city which will afford to its several parts the ordinary benefits of local government. The river does not constitute a barrier to complete amalgamation of the communities upon its opposite banks. *Ocean Beach Heights v. Brown-Crummer Investment Co.,* 302 U. S. 614, 58 S. Ct. 385, 82 L. Ed. 478, cited by appellants, is distinguishable on the facts. There it was sought to incorporate two areas separated by a bay about a half-mile in width which was not spanned by a bridge. The distance between the two areas by land was about ten miles, and to go by land from one to another, it was necessary to pass through another municipality. It was held that the two areas were not contiguous.

Secondly, it is contended that at the time of the election area "C" was not contiguous because it was separated from the city by area "A". It is argued that proceedings for annexation of area "C" could not be lawfully commenced until after area "A" had been made a part of the municipality. We do not agree with this view. All that the statute requires is that a petition for an election be filed by a majority of the freeholders in the area proposed to be annexed followed by a favorable vote both there and in the municipality. These requirements have been met both as to "A" and "C". It is true that if the election relating to the attachment of area "A" had not been favorable, area "C" could not have been annexed because there would have been a lack of contiguity between it and the City. Both elections resulted favorably to annexation and the two areas were simultaneously declared parts of the City of Charleston. There

was never a moment of time when there was lack of contiguity between the City and the entire area which was annexed. Where the inhabitants of two separate territories seek annexation to a municipality, there is nothing in our statute prohibiting them from simultaneously commencing annexation proceedings. It is sufficient if at the time such areas are annexed, all are contiguous to each other, and one of them is contiguous to or adjoins the city.

While we have found no decision in this State on the question, it seems to be well settled elsewhere that contiguity does not require that each of the several tracts annexed be individually contiguous to the city, so long as the several tracts are themselves contiguous and one of them adjoins the city boundaries. *Hurla v. City of Kansas City,* 46 Kan. 738, 27 P. 143; *The City of Evansville v. Page,* 23 Ind. 525; *In re Sadler,* 142 Pa. 511, 21 A. 978; *Huff v. City of La Fayette,* 108 Ind. 14, 8 N. E. 701; *In re Westmoreland, Inc.,* 15 Ill. App. (2d) 51, 145 N. E. (2d) 257; *In re Lancaster City Ordinance No. 20-1952,* 374 Pa. 543, 98 A. (2d) 33; Annotation 62 A. L. R., at page 1016.

None of the foregoing cases recognize the distinction now sought to be made by appellants. On the contrary, in most of them contiguous tracts, only one of which was adjacent to the municipality, were annexed at the same time. In *City of Evansville v. Page, supra,* one of the headnotes is as follows: "Where several pieces of platted territory do not all adjoin a city, but adjoin one another, and one of them adjoins a city, they may all be annexed at the same time." In *Huff v. City of La Fayette, supra,* the Court said [108 Ind. 14, 8 N. E. 703] : "It was not necessary that appellant's lands should have been contiguous to the city. If his, and the other tracts of land proposed to be annexed, were contiguous to each other, and one of them was contiguous to the city, that was sufficient."

All exceptions are overruled; the annexations are adjudged to be valid; and the order of the Circuit Court is affirmed.

STUKES, C. J., and TAYLOR, LEGGE and MOSS, JJ., concur.