1202

T. Gaillard PINCKNEY, Sr., Appellant, and Beaufort County, Intervenor-Appellant v. The CITY OF BEAUFORT, Henry C. Chambers, Mayor of the City of Beaufort, and Alice G. Wright, Jack Queener, David M. Taub, and Fred. S. Washington, Jr., who are Members of the City Council of the City of Beaufort, and Beverly W. Gay, Clerk of the City of Beaufort, South Carolina, Respondents, and Homer Hungerford, Intervenor-Respondent.

(370 S. E. (2d) 909)

Court of Appeals

*Ladson F. Howell* and *Stephen P. Hughes,* both of *Howell, Gibson, Boney & Hughes,* and *V. Manning Smith,* of *Sherwood N. Fender and Assoc.,* Beaufort, *for appellants.*

*William B. Harvey, III,* of *Harvey & Battey; C. Scott Graber,* of *Graber, Baldwin & Fairbanks,* Beaufort; and *James B. Richardson, Jr.,* of *Richardson & Smith,* Columbia, *for respondents.*

Heard May 23, 1988.

Decided Aug. 11, 1988.

CURETON, Judge:

In 1986 the City of Beaufort adopted an ordinance which extended its boundaries to include two lots of land located on Lady's Island. In this declaratory judgment action the appellants, T. Gaillard Pinckney, Sr. and Beaufort County, seek a determination that the annexation proceedings are void. The trial court ruled the annexation valid. We affirm.

Lady's Island is located to the east of the City of Beaufort. The Beaufort River and its tidal arm, Factory Creek, separate the two land masses.[1] Homer Hungerford agreed with the City of Beaufort that he would build a hotel and shopping complex on two parcels of land on Lady's Island if the City would annex the land. The parcels in question are located on the western shore of Lady's Island. Running along that shore is a body of water now known as Factory Creek. Factory Creek begins and ends in the Beaufort River.

A city may annex an area only if the area to be annexed is contiguous to the city's boundary. Section 5-3-150(1), Code of Laws of South Carolina, 1976. The boundary of the City of

---

[1] See attached map for depiction of area.

Beaufort is described in a 1913 petition for incorporation as follows:

> Beginning at the stone established by the United States Direct Tax Commissioner [in 1863] ... and running thence north to low water mark in Pigeon Point Creek, thence eastwardly following the windings of such creek to *the Beaufort River, thence due east to the eastern shore of the Beaufort River, thence down Beaufort River following the shoreline* to where the same intersects with the western line of Hamer Street....

The annexed area is contiguous to the City of Beaufort only if at the time of the establishment of the boundary lines for the City of Beaufort the body of water known as Factory Creek was considered a part of the Beaufort River and not a separate body of water. The core question is whether the shore line described in the boundary description in the petition for incorporation is the same as the shore line presently running along the eastern boundary of Factory Creek and the western boundary of Lady's Island. The trial judge found it was.

Section 15-53-30, South Carolina Code of Laws, 1976, provides that any interested person may petition a court for a determination of questions of validity or construction under a municipal ordinance. Fact questions in declaratory judgment actions are tried and determined in the same manner as issues of act are tried and determined in other civil actions. Section 15-53-90. Further, a declaratory judgment order may be reviewed as other orders, judgments and decrees. Section 15-53-110. In order for this court to determine the scope of our review, we must first determine the nature of the relief sought.

Beaufort County relies upon the cases of *Gray v. South Carolina Public Service Authority*, 284 S. C. 397, 325 S. E. (2d) 547 (1985) and *Indigo Realty Company, Ltd. v. City of Charleston*, 281 S. C. 234, 314 S. E. (2d) 601 (1984) as support for characterizing this as an equity case. Its reliance on those cases is misplaced. A reading of the cases reveals the relief sought in each case was an

injunction[2] which is cognizable in equity. *State v. Yelsen Land Co.*, 257 S. C. 401, 185 S. E. (2d) 897 (1972) (action for injunctive relief is equitable); *Riley v. Town of Greenwood*, 72 S. C. 90, 51 S. E. 532 (1905). The relief sought by Pinckney and Beaufort County is to invalidate an ordinance because allegedly the boundary of the City of Beaufort is not contiguous to the annexed property. To determine the validity of the ordinance the court must necessarily determine the eastern boundary line of the City. An action to determine a boundary line is an action at law. *Bell v. South Carolina Public Service Authority*, 277 S. C. 556, 291 S. E. (2d) 196 (1982); *Sossamon v. Peeler*, 291 S. C. 256, 353 S. E. (2d) 152 (Ct. App. 1987). Our review of the trial order is, therefore, limited to a determination of whether there is any evidence to support the finding of the trial court. *Bell v. South Carolina Public Service Authority, supra.*

The appellants admit in their brief the description of the City's boundaries, as established in its petition for incorporation, is ambiguous. "Where there is ambiguity in the description of the boundary of a municipality, prevailing usage or custom or contemporaneous construction of such description may be resorted to in determining the boundary. . . ." 56 Am. Jur. (2d) *Municipal Corporations* Section 41 (1971).

The appellants first argue the trial judge committed reversible error in allowing certain deeds into evidence. The deeds were offered in an attempt to establish that the eastern boundary of Factory Creek was at the time of the establishment of the City's eastern boundary conterminous with the eastern boundary of the Beaufort River. Appellants assert the deeds contained inadmissible hearsay, in that they were introduced "to establish opinions of particular persons concerning areas encompassed by the Beaufort River."

---

[2] *Central Realty Corporation v. Allison*, 218 S. C. 435, 449, 63 S. E. (2d) 153, 159 (1951) states: "In at least some, if not all, American jurisdictions, under appropriate circumstances, the validity of municipal ordinances may be tested by certiorari, declaratory judgment proceedings, habeas corpus, injunction, mandamus, prohibition, and quo warranto. (citation omitted)"

The objectionable deeds relate to properties located on Lady's Island. These deeds show the Beaufort River as either their northern or western boundary. The deed dates range from 1909 to 1922; the dates selected by the City because the Petition for Incorporation establishing the boundaries of the City is dated in 1913. The court admitted the deeds as reputation evidence of "land boundaries and land customs. . . ." We find no abuse of discretion in the admission of the deeds. "[E]vidence of common repute is admissible as to the location of a private as well as a public boundary line." *Richardson v. Register*, 227 S. C. 81, 90, 87 S. E. (2d) 40, 44 (1955); *See also, County of Darlington v. Perkins*, 269 S. C. 572, 239 S. E. (2d) 69 (1977) (reputation is admissible to prove matters of general history); 12 Am. Jur. (2d) *Boundaries* Section 106 (1964). The deeds were admissible and clearly relevant in establishing the commonly known name of that body of water located to the west and north of the property owners on Lady's Island. Who would know better the name by which the questioned body of water was known in 1913 than the inhabitants who lived or owned property on its shore at that time?

At trial Pinckney offered the testimony of Gerhard Speiler, president of the Beaufort County Historical Society, to establish the pre-annexation boundaries of the City of Beaufort. The appellants assert error in the admission of his testimony. Speiler traced the names of the Beaufort River and its tidal arm through two centuries. He testified the tidal arm known since about 1917 as Factory Creek has always been known to be part of the Beaufort River. The appellants' objection to Speiler's opinion is based on a lack of a "sufficient foundation to reach a legal conclusion." They complain Speiler is not an expert "in the area of municipal boundaries." We reject this argument. Speiler was offered as a historian. The record reflects Speiler has substantial expertise in the area of the historical geography of Beaufort County. Moreover, any opinion Speiler may have voiced concerning the location of the City's boundary line is cumulative to other documentary evidence of the location of the boundary.

The appellants next argue the evidence is insufficient to establish that Factory Creek is part of the Beaufort River. We disagree. There is ample evidence to sup-

port the trial judge's ruling on this point. Property descriptions for several tracts of land on the Lady's Island shore referred to the waters abutting the Island as the Beaufort River. Numerous maps of the area dating back to 1777 show that not until recent years does the arm of the Beaufort River next to Lady's Island bear a creek name. In fact, the evidence shows that the body of water known as Factory Creek did not acquire the name until after the 1913 incorporation of the City. Finally, one of the more compelling reasons for finding that the City's incorporators understood that Factory Creek was part of the Beaufort River is the fact that their clear intent as expressed in the Petition for Incorporation was that the eastern boundary of the City would follow a shore line. The boundary line urged by the appellants would not accomplish this. Only the boundary line proposed by the respondents coincides with the stated intention of the incorporators.

Appellants next argue that even if Factory Creek is a part of Beaufort River and there exists contiguity between the City and the annexed parcels, the configuration of the City after annexation does not have the "unity and compactness" required by law. *See Tovey v. City of Charleston,* 237 S. C. 475, 117 S. E. (2d) 872 (1961) (contiguity generally necessary even in the absence of statutory requirements to make a city a collective body having unity and compactness). *Tovey* and *Bryant v. City of Charleston,* 368 S. E. (2d) 899 (S. C. 1988) have held that natural barriers such as water or marshlands do not destroy the contiguity required by law. Nevertheless, appellants argue the river is, under the circumstances of this case, a "barrier to complete amalgamation between the City and the annexed parcels" because access to the annexed parcels can only be reached by automotive traffic proceeding for a short distance through unannexed or county property." The trial court adequately disposed of this issue and we adopt that pertinent part of its order as the opinion of this court:

Petitioner reads the *Tovey* case to say that when the annexing municipality, although physically contiguous to the annexed area, is separated from it by a river, there must be a bridge linking the two, and the bridge must allow a motorist to drive from the original city to the annexed area without once leaving the city.

The Court's opinion in *Tovey* does not say whether [the Ashley River Bridge], which crossed the Ashley River from Charleston and linked it to the annexed area, lay wholly within the city limits (as expanded by annexation) or not. The transcript of Record in *Tovey* shows that the southern half of the [bridge] lay in the annexed area. However, from the midpoint of the Ashley River to the furthest western extent of the annexed area, the *northern* half of the [bridge] (for westbound traffic) lay outside of the city. Thus, a motorist driving from the old city to the annexed area left the city limits as he crossed the mid point of the Ashley River Bridge, and could not re-enter the city limits until making a left turn onto the first road in the annexed area, west of the river.

The court in *Tovey* distinguished the facts in that case from the facts in *Ocean Beach Heights v. Brown-Crummer Investment Co.*, 302 U. S. 614, 58 S. Ct. 385, 82 L. Ed. 478, a case where a municipality on one side of Biscayne Bay, Florida, was separated from an annexed area on the opposite side of the bay by a road distance of ten miles. The nearest route from the municipality to the annexed area took the motorist through an intervening municipality. The *Ocean Beach Heights* case is no closer to the facts of the present case than it was to the facts in *Tovey*. If anything, the City of Beaufort and the annexed area are even more closely linked by road than were the City of Charleston and the annexed area in the *Tovey* case.

Appellant's final argument goes to the question of the isolation of the annexed area from the City's mainland. They argue that the annexed parcels are geographically isolated from the mainland of the City. The most direct route between the City and the annexed area is a drawbridge which when raised would delay persons traveling to and from the annexed area. They also urge that since the area between the bridge and the annexed parcels is subject to building and development standards set by the County of Beaufort, and not the City of Beaufort, such differing guidelines will only lead to further isolation of the

annexed area. Although argued under the banner of compactness, it seems to us the essence of their argument goes to the wisdom of the annexation. Determining the wisdom of an annexation is a legislative not judicial function. *Harrell v. City of Columbia*, 216 S. C. 346, 58 S. E. (2d) 91 (1950). Absent arbitrariness, the courts will ordinarily decline to pass upon the wisdom of an annexation. *Hollingsworth v. City of Greenville*, 241 S. C. 378, 128 S. E. (2d) 704 (1962); *Bellamy v. Johnson*, 234 S. C. 172, 107 S. E. (2d) 33 (1959). Appellants do not argue the annexation was arbitrary.

Affirmed.

GARDNER, J., and RUSHING, Acting Judge, concur.

