529 S.E.2d 64

**ST. ANDREWS PUBLIC SERVICE DISTRICT, Appellants,**

v.

**The CITY COUNCIL OF the CITY OF CHARLESTON, Respondents.**

No. 3128.

Court of Appeals of South Carolina.

Heard Jan. 12, 2000.
Decided March 6, 2000.
Rehearing Denied May 13, 2000.

Gregg Meyers, of Charleston, for appellants.

William Regan, Francis Cantwell, and Carl Stent, all of Regan & Cantwell, of Charleston, for respondents.

CONNOR, Judge:

The St. Andrews Public Service District (the PSD) brought a declaratory judgment action challenging two City of Charleston ordinances which annexed property into the City. The PSD claims that the annexations are "absolutely void as not authorized by law." The PSD alleges the City has not complied with the statutory requirement of contiguity, and, therefore, has failed to comply with the statutes authorizing annexation by municipalities. The trial court held the PSD lacked standing and dismissed the suit. The PSD appeals. We reverse and remand.

This action involves the City's annexation of property serviced by the PSD through (1) the 75% petition method as set forth in S.C.Code Ann. § 5–3–150(1) (Supp.1999), and (2) the 100% petition method as set forth in S.C.Code Ann. § 5–3–150(3) (Supp.1999).

Under the 75% method, a city may annex any area contiguous to the city when at least 75% of the freeholders owning at least 75% percent of the assessed valuation of the property in the area petition for annexation. S.C.Code Ann. § 5–3–150(1) (Supp.1999). When the 75% method is utilized, "[a]ny municipality or any resident of it and any person residing in the area to be annexed or owning real property of it" has standing to challenge the annexation. *Id.* However, the PSD is not a property owner, and the South Carolina Supreme Court has held that, for purposes of annexation statutes, a public service district is not a municipality. *Tovey v. City of Charleston,* 237 S.C. 475, 117 S.E.2d 872 (1961).

Under the 100% method, a city may annex any area contiguous to the city when all of the persons owning real estate in the area request annexation through a petition. S.C.Code Ann. § 5–3–150(3) (Supp.1999). There is no specific

protest standing provision for challenging an annexation of property under the 100% method. The South Carolina Supreme Court, however, ruled "the challenging party must assert an infringement of its own proprietary interests or statutory rights in order to establish standing under statutory provisions governing challenges to the one hundred percent landowner petition method of annexation." *State by State Budget & Control Bd. v. City of Columbia,* 308 S.C. 487, 489, 419 S.E.2d 229, 230 (1992).

 The PSD does not have standing as a property owner or as a municipality. Furthermore, the PSD has not alleged a sufficient infringement of its own proprietary interests or statutory rights. However, those conclusions do not end the inquiry into the PSD's standing to challenge the City's annexation ordinances. Our Supreme Court has recognized that where an annexation is absolutely void, *i.e,* not authorized by law, private individuals have standing to attack the annexation. *Quinn v. City of Columbia,* 303 S.C. 405, 407, 401 S.E.2d 165, 166–67 (1991) (citing C.S. Patrinelis, Annotation, *Capacity to Attack the Fixing or Extension of Municipal Limits or Boundary,* 13 A.L.R.2d 1279, 1292 (1950) ("In what appears to be a recognized exception to the general rule that a private individual is without capacity to attack the alteration of municipal limits or bounds, the view has been taken that where the act of alteration is absolutely void, because not authorized by law nor under color of law, it is subject to attack by anyone, whenever and wherever its validity is questioned.")). One cannot merely challenge the methods by which the annexation occurred, but must allege the annexation is unauthorized by the laws of this State. *Quinn,* 303 S.C. at 407, 401 S.E.2d at 167.

In its complaint, the PSD alleges the City's annexation ordinances are unauthorized by law because the properties annexed were not contiguous to the City's existing boundaries. Specifically, the PSD alleges the City illegally annexed roads to achieve contiguity to properties that were not otherwise contiguous to the City.

The trial judge found the PSD did not own real property in the area and had no proprietary interest or statutory rights in the annexed area. Therefore, he held the PSD lacked stand-

ing to challenge the City's annexations. The judge also found that the PSD merely attacked the methodology by which the annexation occurred. He ruled there was insufficient evidence in the record to find the annexation methods used by the City were unauthorized by law.

In South Carolina, municipalities derive their power to annex land and extend their boundaries solely from the General Assembly, and municipal annexations are controlled by statute. S.C.Code Ann. §§ 5–3–10 to –315 (1977 & Supp. 1999); *see* 56 Am.Jur.2d *Municipal Corporations* § 63 (1971). Accordingly, when a municipality exercises its statutory right to annex territory, it must strictly "comply with and conform to statutory provisions and requirements." *Huntley v. Potter*, 255 N.C. 619, 122 S.E.2d 681, 686 (1961); *see* 56 Am.Jur.2d *Municipal Corporations* § 63 (1971). The ability of a municipality to extend its limits by annexation is restricted, and the applicable statute provides, "Any city or town council may extend the corporate limits of such city or town **in the manner set forth in this chapter.**" S.C.Code Ann. § 5–3–10 (Supp.1999) (emphasis added). Therefore, for an annexation to be valid under South Carolina law, a municipality must strictly comply with the statutes governing annexations.

The statute outlining the 75% method of annexation provides that "[a]ny area or property which is **contiguous** to a city or town may be annexed to the city or town." S.C.Code Ann. § 5–3–150(1) (Supp.1999) (emphasis added). Likewise, the statute outlining the 100% method of annexation provides that "any area or property which is **contiguous** to a city or town may be annexed to the municipality." S.C.Code Ann. § 5–3–150(3) (Supp.1999) (emphasis added). Therefore, a prerequisite to a lawful annexation is that the property to be annexed must be contiguous to the existing boundaries of the municipality. When the property is not contiguous, annexation of that property is unauthorized by law because annexation of noncontiguous property is beyond the authority conveyed to the municipality by the General Assembly.

Courts have generally held that contiguous is synonymous with the terms "adjacent to" or "adjoining." Erwin S. Barbre, Annotation, *What Land is Contiguous or Adjacent to Municipality so as to be Subject to Annexation*, 49 A.L.R.3d

589, 599 (1973). Our Supreme Court explained, "The statutory word 'contiguous' must be afforded its ordinary meaning of 'touching' " *Bryant v. City of Charleston,* 295 S.C. 408, 410, 368 S.E.2d 899, 901 (1988). To achieve contiguity, actual physical touching of the properties is not required. The Supreme Court has rejected an argument that the annexed parcels must have the additional qualifications of unity, substantial physical touching, or a common boundary. *Id.* at 410, 368 S.E.2d at 900. However, the Supreme Court has never held that non-adjacent properties not incidentally separated by a road, railway, or waterway are in fact contiguous.

The trial court in this case held the property in question was contiguous under *Tovey v. City of Charleston,* 237 S.C. 475, 117 S.E.2d 872 (1961), *Bryant v. City of Charleston,* 295 S.C. 408, 368 S.E.2d 899 (1988), and *Glaze v. Grooms,* 324 S.C. 249, 478 S.E.2d 841 (1996). However, these cases do not address the unique argument supporting the contiguity the City makes here.

The parties challenging the annexation in *Tovey* argued that the annexation was invalid because one of the parcels of land included 321 acres of marshlands owned by the State. *Tovey,* 237 S.C. at 483, 117 S.E.2d at 875–76. The Court held that the inclusion of the marshlands did not invalidate the annexation simply because they were owned by the State, as the city could annex that portion as well. *Id.* The appellants in *Tovey* also contended that the parcels lacked contiguity because the area owned by the city and the area to be annexed were separated by the Ashley River. The Court noted, however, that there was no intervening space between the annexed areas and the city boundary. The mere fact they were separated by the river did not itself break the contiguity. *Id.* at 484–85, 117 S.E.2d at 876–77.

In *Bryant,* the trial court ruled water or marshland could not supply contiguity between high grounds sought to be annexed. In reversing the trial court, our Supreme Court held that "contiguity is not destroyed by water or marshland within either the annexing municipality's existing boundaries or those of the property to be annexed merely because it **separates** the parcels of highland involved." *Bryant,* 295 S.C. at 411, 368 S.E.2d at 901 (emphasis added).

This rule of law was reiterated in *Glaze v. Grooms*, where James Island used marshes and wetlands to establish contiguity between nine areas of high ground. In *Glaze*, however, the Court found a lack of contiguity because James Island attempted to annex marshlands previously annexed by the City of Charleston. *Glaze*, 324 S.C. at 253–54, 478 S.E.2d at 844. The Court explained:

> We agree with Appellants' basic proposition that contiguity is not destroyed by water or marshlands which separate parcels of highland. However, the flaw in Appellants' argument is that it essentially disregards the fact that the waters/wetlands it seeks to use to establish contiguity have **already been annexed** by another municipality.

*Id.* at 253, 478 S.E.2d at 844 (original emphasis) (citations omitted).

In the present case, the Charleston City Council attempts to establish contiguity, not by merely crossing a roadway to annex an adjacent property, but by annexing the length of a road to establish a common boundary. In essence, it argues that because the City's current property abuts a roadway, any parcel that abuts the same roadway is necessarily contiguous if the roadway is also annexed.

That kind of annexation is not authorized by the laws of this state. Municipal annexations of public roadways are limited by section 5–3–110, which provides:

> Whenever the whole or any part of any street, roadway or highway has been accepted for and is under permanent public maintenance by a city, a county or the Department of Transportation, that portion of any right-of-way area not exceeding the width thereof lying beyond but abutting on the corporate limits of the city may be annexed to and incorporated within the city....

S.C.Code Ann. § 5–3–110 (Supp.1999).

The PSD asserts the City's annexation ordinances were unauthorized by law because the properties being annexed were not contiguous to the City's existing boundaries. Sections 5–3–10, –110, and –150 lend strong support to the PSD's assertions. Based on the Supreme Court's unequivocal language in *Quinn*, we reverse the trial court and hold the PSD has properly alleged the City's annexation ordinances are

unauthorized by law and beyond the power granted by the General Assembly. The PSD, therefore, has established standing to maintain this suit.

We remand to the trial court for further proceedings consistent with our holding that the PSD has standing to challenge the validity of these ordinances. The court must determine whether the properties proposed to be annexed are in fact contiguous to the City's existing boundaries.[1]

**REVERSED AND REMANDED.**

GOOLSBY and ANDERSON, JJ., concur.

---

1. It is particularly troubling that, especially under the 100% annexation method, the City's position concerning standing would virtually eliminate all judicial review of allegedly illegal annexation ordinances. Although the complaint does not specifically argue that the City Council's acts were *ultra vires,* the implication is clear. If we adopted the City's view of standing, many illegal annexations "would be nearly completely immune from review" and "there would be no opportunity to remedy governmental abuse." *Newman v. Richland County Hist. Preserv. Comm'n,* 325 S.C. 79, 85, 480 S.E.2d 72, 75 (1997) (Toal, J., dissenting).